**NELSON PLANNING LIMITED,**
Plaintiff,

v.

**TEX-O-GRAPH CORPORATION,**
Defendant,

**Willcox & Gibbs Sewing Machine Company, Counterclaim Defendant.**

No. 63 Civ. 1829.

United States District Court
S. D. New York.

Feb. 2, 1968.

20. See note 14, supra.

Davis, Hoxie, Faithfull & Hapgood, New York City, for plaintiff, William F. Kilgannon and Douglas E. Whitney, New York City, of counsel.

William R. Liberman, New York City, of counsel, and Paul M. Craig, Jr., Washington, D. C., for defendant.

## OPINION AND FINDINGS

POLLACK, District Judge.

1. This is an action for infringement of the United States letters patent number 2,842,772 (hereinafter referred to as the '772 patent) under the patent laws of the United States. The defendant seeks a declaration of invalidity of the patent and a declaration of non-infringement, and asserts other counterclaims against the plaintiff and an impleaded party defendant claiming unfair competition, antitrust violation, and conspiracy in restraint of trade.

The counterclaims against the plaintiff for unfair competition, antitrust violation, and conspiracy in restraint of trade were discontinued with prejudice on consent during the trial and without costs. The counterclaim against the impleaded defendant based on the claim of unfair competition was dismissed on the ground of lack of federal jurisdiction. The remaining counterclaims against the said impleaded defendant were discontinued with prejudice during the trial on consent and without costs.

2. The '772 patent, entitled "Manufacture of Garments or Articles from Sheet Material" was issued July 15, 1958,

in the name of Sydney Littman, as an invention on an application, serial number 404,605, filed January 18, 1954.

3. Plaintiff, Nelson Planning Limited (hereinafter referred to as "plaintiff" or "Nelson") is a limited company (corporation) organized and existing under the laws of England, having a place of business located at Andrew House, 60 Worship Street, London E.C.2, England, and is the owner of the entire and undivided right, title and interest in and to the '772 patent, by assignment from the inventor, Sydney Littman, together with all rights to recover for infringement of the '772 patent.

4. Defendant, Tex-O-Graph Corporation (hereinafter referred to as "Tex-O-Graph"), is a New York corporation having its place of business at 350 Fifth Avenue, New York, New York.

5. The complaint charges defendant with infringing the patent by (a) practicing the said patented method, through use of its Tex-O-Graph system of miniaturized marker making, as an aid to its sale of Tex-O-Graph apparatus; (b) by actively inducing garment manufacturers in this country, who are not licensed under said patent, to use the said system; and (c) by the sale to unlicensed garment manufacturers of apparatus for use in practicing the patented method, the said apparatus constituting a material part of the use of the patented method, and known to defendant to be especially made and especially adapted for such use, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

6. The answer asserts the defenses of non-infringement and invalidity.

7. (a) This court has jurisdiction of the plaintiff Nelson and of the defendant Tex-O-Graph and the subject matter of this action under the patent laws of the United States, Title 35 U.S.C., Section 271, and the Judicial Code, Title 28 U.S.C., Section 1338(a); the venue of the action is based upon Title 28 U.S.C., Section 1400(b); and the venue of the defendant's declaratory judgment counterclaims against the plaintiff is based upon Title 28 U.S.C., Sections 1332, 1338, and 2201.

(b) Willcox & Gibbs the counterclaim defendant is a New York corporation.

(c) The patent in suit is a process patent and covers a process for reducing garment patterns to approximately 1/25th of their original area thus facilitating both storage and the marking of the patterns onto their fabric in a position so as to involve the least amount of waste of fabric.

■ 8. There is a presumption of validity of a patent. The burden is on the defendant to prove invalidity. 35 U.S.C. § 282. And this burden must be carried beyond a reasonable doubt and conclusively. Upjohn Co. v. Italian Drugs Importing Co., 190 F.Supp. 361 (SDNY 1961).

■ Sections 101 and 102 of the Patent Act prevent patentability only where the invention was "identically disclosed" by the prior art. A prior art patent or publication is not an anticipation unless "identical" to the patented invention. Ling-Temco-Vaught, Inc. v. Kollsman Instrument Corp., 372 F.2d 263 (2 Cir. 1967).

If the differences between the subject matter to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains, a patent may not be obtained. 35 U.S.C. Section 103 (1958).

■ The test of obviousness is a "specialized reasonable man test" based on economic and motivational rather than technical issues. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) and United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966).

Monopoly by patent is denied when a particular result could have been accomplished by anyone familiar with the art.

9. As stated above, another issue here is the question of whether or not the

method of defendant infringed the claims of the patent in suit.

■ The claims of a patent are the measure of infringement. Graver Tank and Manufacturing Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); Reiner v. I. Leon Co., Inc., 285 F.2d 501 (2d Cir. 1960).

■ There is infringement where the defendant has adopted the principle of the invention. Georgia-Pacific Corp. v. United States Plywood Corp., 258 F.2d 124 (2d Cir. 1958), cert. denied 358 U.S. 884, 79 S.Ct. 124, 3 L.Ed.2d 112 (1958).

■ It has long since been established that reference may be made to the prosecution history in the Patent Office when the scope of an invention is in issue. Graham v. John Deere Co., 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

■ Thus it is proper to interpret the claims as allowed in the light of those rejected, thereby insuring that coverage relinquished by the applicant in order to secure issuance will not be regained through liberal construction of the patent. This rule of claim construction is commonly referred to as "file wrapper estoppel"; it occurs when claims are narrowed by the applicant in order to obtain allowance. Delamere Co., Inc. v. Taylor-Bell Co., Inc., 249 F.Supp. 471 (SDNY 1966); Katz v. Horni Signal Manufacturing Corp., 145 F.2d 961 (2d Cir. 1944).

■ The file wrapper estoppel doctrine necessarily qualifies the doctrine of equivalents frequently invoked to expand the reach of a patent. Musher Foundation, Inc. v. Alba Trading Co., Inc., 150 F.2d 885, 888 (2d Cir. 1945); see also Stiegele v. J. M. Moore Import-Export Co., Inc., 312 F.2d 588 (2d Cir. 1963).

This does not mean, however, that a limitation added to a claim to secure its allowance is not to be construed liberally in the light of the specification, the actual contribution to the art made by the patentee, and be given some reach by the application of the doctrine of equivalents.

■ The file wrapper estoppel doctrine proscribes only an interpretation of the claim which would have the effect of disregarding the limitation and of reclaiming matter relinquished to secure allowance of the patent.

■ 10. The evidence failed to show substantial acceptance by the industry or material success of the invention in the market place.

There is no evidence of copying of plaintiff's invention by the defendant or any failure to make the discovery by others seeking to do so.

The problem which the patent in question purports to solve is one that skilled artisans within the industry found solutions for, that are virtually identical in method, in material respects to the solution of the patent.

The proof shows, beyond reasonable doubt, by positive, uncontradicted testimony which is not inherently improbable, a substantial prior public use in this country of the method of the invention in its material aspects. This proof was corroborated by documents and circumstances which the court may not ignore. The method of the invention was thought of and put in use before the inception of the instant patent application. Further, there was disclosure identical to that in the patent in suit in earlier foreign patents, Belgian, Swiss, and German, when taken together, and the invention was fully anticipated by those earlier foreign patents. Steps in the patent in suit which were undisclosed in the foreign patents were inherent in the foreign disclosures and represent no more than ordinary procedural extensions of the teachings contained therein; in short, in the language of Section 103:

" * * * the subject matter * * * and the prior art are such that the subject matter as a whole would have been obvious at the time * * * to a person having ordinary skill in the art to which said subject matter pertains."

■ The proof fails to evidence any unsolved need, any failure of others, any operating characteristics of the method

or system shown to have been unexpected or to have surpassed then existing miniaturization methods.

11. The '772 patent discloses, among other things, a method of making a garment from a number of diversely shaped component parts cut from a length of sheet material sufficient to produce a plurality of said garments and to a method of making a chart for use in the manufacture of such a garment and describes and illustrates an apparatus in the form of a planning table on which the scale model patterns are to be arranged.

12. Claims 1 and 3 of the '772 patent are directed to a method of making the garment from a number of diversely shaped component parts cut out from a length of sheet material sufficient to produce a plurality of said garments which employs the steps of:

(a) providing a supporting surface representing at the reduced scale the width of the material, arranging on the surface "rigid" models at the same reduced scale of the component parts of the garment in predominantly abutting relationship in the "smallest" rectangular space of a given width into which the model parts will fit without overlapping, reproducing the arrangement of the scale models to provide a chart, arranging the full-size patterns in the same order as shown on the chart, cutting out the material from the full-size patterns, and making up the garment from the component parts so cut out (claim 1);

(b) preparing an individual full-size pattern for each component part, preparing a "rigid" reduced scale model of each pattern, enclosing on three sides a work surface having a width representing at the same reduced scale the width of the material, arranging the reduced scale model in predominantly abutting relationship on the work surface to occupy the "smallest" rectangular portion having the same width into which the parts will fit without overlapping, reproducing this arrangement of the scale models in the form of a chart, arranging the full-size patterns on the sheet material in the same order as shown on the chart, cutting

out the material according to the full-size patterns, and making the garment from the pieces of the material so cut (claim 3).

13. Claim 2 is directed to a method of making a chart for use in the manufacture of a garment from a number of diversely shaped component parts cut out from a length of sheet material sufficient to produce a plurality of the garments, which employs the steps of providing a supporting surface representing at a reduced scale the width of the material, arranging on the surface "rigid" models at the same reduced scale in predominantly abutting relationship in the "smallest" rectangular space of a given width into which the model parts will fit without overlapping, and reproducing the arrangement of the models on an indicia-receiving sheet to provide the chart.

14. The evidence adduced by the defendant, which the court credits, established clearly and beyond reasonable doubt the prior public use in this country in separated geographical areas of miniaturized patterns for use in miniaturized marker making more than one year prior to the filing date of the application Serial No. 404,605 on January 18, 1954, which matured eventually into the '772 patent.

15. The discontinuance of the use of reduced patterns for miniaturized marker making by some was due to the absence of suitable equipment permitting an economic production of accurately reduced patterns.

16. Reduced scale models of any "rigid" material, for example one of plastics material, which must also be "very accurate in size and shape," are announced as requisite to the successful practice of the method described in the '772 patent.

17. However, the '772 patent does not show or describe any apparatus to meet those requirements.

18. The claims of the '772 patent also specify that the scale models are arranged in the "smallest" rectangular space of a given width into which they will fit without overlapping.

19. The '772 patent does not show or describe any criteria or means for determining such "smallest" rectangular space.

20. Defendant's Tex-O-Graph equipment includes an integrator mounted on the equipment to determine simultaneously with the making of a reduced pattern the area of such reduced pattern to enable an accurate approach in determination of the percentage waste of a marker.

21. Plaintiff, upon request from some of its customers, decided to offer a planimeter as an optional extra with its equipment for determining the area of the reduced patterns and therewith the percentage waste in a given marker.

22. A person using the disclosure of the '772 patent to practice the described method is relegated to a trial-and-error approach, basically a mental step, the success of which in reaching the minimum unavoidable waste in the planning stage depends exclusively on the skill of the planner in virtually all situations.

23. All the claims of the '772 patent call for the step of arranging the reduced scale models in the "smallest" rectangular space of a given width into which they will fit without overlap.

24. No means or criteria whatsoever are disclosed in the '772 patent which would enable determination of such "smallest" space or of when the reduced scale models are arranged in such "smallest" space.

25. The '772 patent fails to disclose any means which would permit a determination of infringement of its claims.

26. The Belgian patent 350,759 of April 23, 1928, to Brudek discloses a miniaturized chart consisting of a sheet of paper or cardboard whose measurements correspond, at a reduced scale, to the dimensions of the piece of fabric to be cut. The parts of the cutting pattern are disposed on this sheet of paper or cardboard in such a manner as to allow cutting all of the pieces of the garment in accordance to the chart in question.

27. The Swiss patent 201,602, published February 16, 1939, granted December 15, 1938, to Isidore Ackermann discloses a chart for the parts of a pattern on which are represented, at a reduced scale, the parts of a garment pattern on a backing simulating the full scale in the relative positions corresponding to those which the full-size parts of the pattern must assume in actual use. It comprises along two sides 2 and 3 at right angles two graduations in centimeters at the reduced scale of the chart. Reduced scale parts 6 of the pattern are used in connection with the chart 1. The relative positions and the illustrated dimensions 6 of the chart correspond to those which the full-size parts of the chart must occupy on the fabric to be used for the garment, and the surface limited by the straight lines 7, 8, 2, and 3, corresponds at the reduced scale exactly to that of the fabric to be used. The emphasis principally is on the two scales and the relative positions of the patterns relative to these sides.

28. The German patent 442,715 published April 6, 1927, and granted as of March 27, 1926, discloses a method for making garment patterns in which the patterns designed for a season of all garments are illustrated at a greatly reduced scale on a glass plate, transparent paper or a roll of film; for use, the patterns are thereupon reenlarged by a beam of light at the desired full scale by an adjustable projection apparatus. This patent also clearly recognizes that the reduction makes possible that a large number of patterns can be reproduced on a relatively small surface and further that a high degree of accuracy can be achieved by photographic production of the small pattern layouts.

29. The German patent 715,483 published December 22, 1941, as an application and granted as of January 22, 1939, discloses a method for producing a photographically reduced marker which, for use in the cutting room, is then projected by means of a projection apparatus onto the cutting table surface so that the fabric placed thereon can be cut, at the full

scale, in accordance with the layout of the marker. This patent also recognizes that the patterns shall be placed as close together as possible to minimize waste.

30. The U. S. Patent 2,610,413 filed September 7, 1951, and issued September 16, 1952, to Dasey discloses miniaturization of models for determining layout in another art. This patent also recognizes that miniature models allow for the most effective utilization of a given space. Additionally, the patent also recognizes that miniature models lend themselves to easy handling. The method described in this patent consists of placing miniature models 3, 4, 5 and 6 on the base in their optimum positions and firmly attaching the same to the base. The base is thereupon inverted, and to obtain a permanent chart of the layout, a transparent film 8 having grids marked thereon corresponding to the grids on base 2 is placed on the top surface of the base. Reproduction templates 9 and 10 shaped to correspond accurately to the outline of the various pieces 3 to 6 are then attached to the outer surface of the film 8 so as to exactly match and cover the exposed base surface. The film sheet 8 is thereupon detached and can serve for reproduction printing or other reproduction methods.

31. The Belgian patent 350,759 and the Swiss patent 201,602 and the German patents 442,715 and 715,483 were not considered by the United States Patent Office in the prosecution of the '772 patent; the Patent Office examiner rejected the claims of the patent application numbered 1 through 5, 14, 15, 17, 18, 19, 20, 21 and 22 on the basis of USA Patent 2,610,413 to H. H. Dasey.

32. To minimize waste of the material by placing the patterns, whether full-scale models or reduced-scale models, is the obvious aim that has been pursued for many years prior to the disclosure of the '772 patent.

33. The method described in claims 1, 2, and 3 of the '772 patent is obvious in the light of the clear disclosure and suggestion for such method in said prior art.

34. The court further finds that the patent in suit, even if valid, is not infringed by the Tex-O-Graph method or the apparatus sold and used in conjunction therewith.

35. Defendant has sold and is currently offering for sale to unlicensed garment manufacturers miniaturized marker equipment under the trade name "Tex-O-Graph" equipment for use in a process of miniaturized marking planning.

36. The "Tex-O-Graph" equipment is described in Plaintiff's Exhibit No. 13 and generally includes a planning board, a pantograph for forming the reduced-scale models, plastic material which is cut to form the reduced-scale models and photographic equipment to take a picture of the reduced-scale layout.

37. The process, described in Plaintiff's Exhibit No. 13, is a method for making a garment from a number of diversely shaped component parts cut from a fabric sufficient to produce a number of garments, which includes the following steps:

(a) models of plastic materials are arranged on a planning surface at a reduced scale which is the same reduced scale as represents the width of the material from which the garment is to be cut;

(b) the models are arranged by the maker through a trial-and-error procedure to obtain the best arrangement to minimize fabric loss;

(c) a chart (photograph) is prepared of the reduced-scale model arrangements; and

(d) the full-scale patterns are then arranged on the fabric according to the layout shown in the photograph, and the fabric is cut according to the full-scale pattern layout.

38. In conjunction with the sale of its Tex-O-Graph equipment to unlicensed garment manufacturers, defendant has installed and continues to install said equipment and to instruct customers in the use of said equipment.

39. In promoting the sale of its Tex-O-Graph equipment, defendant has urged

and continues to urge the virtues of the process described in Plaintiff's Exhibit No. 13 through the media of sales brochures and exhibits at trade shows.

40. Defendant has sold Tex-O-Graph equipment to an unlicensed garment manufacturer who has used said equipment to make miniature markers.

41. In 1961, defendant's President and former General Manager, Mr. Arnold Burton, knew of the existence of a foreign patent corresponding to the patent in suit and while he did not know, he presumed that there was a United States patent.

42. As part of its promotional efforts, the defendant has exhibited the Tex-O-Graph equipment at trade shows and has advertised the same by distributing literature; additionally, the defendant offers a testing procedure to prospective customers.

43. In conjunction with the sale of its Tex-O-Graph equipment, defendant has and continues to install the equipment and will demonstrate to customers the use of the installed equipment.

44. Defendant sells a flexible, thin plastic material of about 0.005 inch thickness for normal use with its Tex-O-Graph equipment; a slightly heavier, flexible plastic material of about 0.015 inch thickness has been sold by defendant on a few rare occasions on request from customers. Both the normally used 0.005 inch material and the 0.015 inch material which are the only materials used and sold by defendant, are not rigid, but are flexible and can be bent if so desired.

45. The Tex-O-Graph equipment involves special equipment including an electric cutting needle for accurately cutting out the reduced scale patterns from the flexible plastic material and an integrator for accurately determining the area of a pattern, both the cutting needle and the integrator being mounted in a particular manner on a pantograph.

46. No substantial evidence has been presented that the defendant has used in its activities the method described in claims 1, 2, and 3 of the '772 patent.

47. The use of the Tex-O-Graph equipment does not, by itself, result in an arrangement of the reduced scale models in "predominantly abutting relationship in the smallest rectangular space of a given width into which the models parts will fit without overlapping"; instead the quality of the arrangement of the reduced-scale models depends on the skill of the person using the equipment.

48. There has been no substantial evidence presented at trial that the defendant or any of its customers have arranged rigid scale models within the smallest rectangular space of a given width into which the model parts will fit without overlapping.

49. Plaintiff, for several years prior to the filing of this suit, knew of Tex-O-Graph equipment sold in Europe and knew that the Tex-O-Graph equipment had been developed by Gunther Voth and on May 28, 1962, commented on the price discrepancies between Laymaker and Tex-O-Graph and recognized the difference between the two systems in a letter addressed to its New York agent.

50. Plaintiff also owns patents, corresponding to U. S. Patent '772 in Canada, France, Switzerland, Holland, and South Africa. No infringement suit has been brought against Gunther Voth, his distributors or customers under plaintiffs' Canadian, French, Swiss, Dutch and South African patents.

51. The U. S. application Serial No. 404,605, which matured into U. S. Patent '772, was filed in the Patent Office on January 18, 1954, with 16 claims, claims 1 through 5 relating to a method of making a garment, and claims 7 to 13 relating to the apparatus for use in the method. In the first Office Action dated April 20, 1954, the Examiner required restriction between the claims drawn to the method and the claims drawn to the apparatus. In response to this Office Action the applicant elected the claims drawn to the method, expressly reserving the right to file a divisional application on the subject matter of the apparatus claims 7 to 13.

In the next Office Action dated December 20, 1954, the Examiner rejected all the claims over certain prior art. In the amendment filed April 21, 1955, applicant requested reconsideration of the rejection. In the next Office Action dated November 7, 1955, all the claims were again rejected as unpatentable over certain prior art. A further amendment was filed May 2, 1956, again requesting reconsideration of the rejection.

In the next Office Action dated July 30, 1956, all the claims were again rejected as unpatentable over certain prior art. Following this rejection, and pursuant to an interview with the Examiner, an amendment was filed in the Patent Office by applicant dated January 30, 1957, in which claims 1, 14 and 15 were amended and additional claim 22 was added, requesting also reconsideration of the rejection.

Affidavits by Sydney Littman, the applicant, and Adam Russell Laurie, alleging commercial success, were filed in the U. S. Patent Office in support of the applicant's position on July 5, 1957, and September 16, 1957. Notwithstanding these two affidavits, the Examiner in the Office Action of December 26, 1957, again rejected all the claims as unpatentable over certain prior art including the U. S. Patent 2,610,413 to H. H. Dasey. An interview was held next between applicant's attorney and the Examiner of the U. S. Patent Office in the presence of David L. Shaw and an amendment was filed pursuant to this interview on January 31, 1958, cancelling all the claims in the application and submitting new claims 23, 24, and 25, corresponding to claims 1, 2, and 3, respectively of patent '772. Affidavits by David L. Shaw and John Thomas Kirk alleging commercial success for the method described in the patent '772 were filed with the amendment of January 31, 1958.

52. The amendment of January 31, 1958, added to the specification of the application of a definition of the word "rigid" as such; claims 23, 24, and 25 submitted with this amendment, corresponding to patent claims 1, 2, 3, also refer to the "rigid" scale models. The term "rigid" did appear in claims 4 and 5, prior to the amendment of January 31, 1958.

53. The following is a comparison of patent claim 1, submitted as claim 23 in the amendment of January 31, 1958, and claim 22, which stood rejected and was cancelled in the amendment of January 31, 1958.

### Claim 1

[A.] . . . providing a supporting surface representing at a reduced scale the width of the material from which the garment is to be made, arranging on said surface rigid models at the same reduced scale of the component parts of said garment, said models being arranged in predominantly abutting relationship in the smallest rectangular space of a given width into which said model parts will fit without overlapping,

[B.] reproducing the arrangement of the scale models to provide a chart,

[C.] arranging full size patterns of said component parts on the sheet material in the same order as shown on the chart,

[D.] cutting out the material along the lines indicated by the edges of the patterns, and

[E.] making up the garment from the component parts so cut out.

### Claim 22

[A.] . . . preparing an individual full size pattern for each component part, preparing a reduced scale model of each pattern, arranging the reduced scale models in the smallest rectangular space of a given width into which said model parts will fit without overlapping on a sheet representing on a reduced scale the material from which the garment is to be made,

[B.] reproducing this arrangement of the scale models in the form of a chart,

[C.] arranging the full size patterns on said first mentioned sheet material in the same order as shown on the chart,

[D.] cutting out said material along the lines indicated by the edges of the patterns,

[E.] making up the garment from pieces of material so cut out.

54. A comparison between patent claim 1 and cancelled claim 22 indicates that the only substantial difference is the addition of the word "rigid" with the models in patent claim 1.

55. The quality of the marker made with the Tex-O-Graph equipment depends on the skill of the person using the same; used by less skilled or unskilled persons, the Tex-O-Graph equipment will not produce the savings in waste.

56. The Tex-O-Graph equipment is a commodity of commerce suitable for substantial non-infringing use depending on the skill or lack of skill of the person using the same.

57. There has not been shown to be any bad faith on the part of plaintiff nor any other circumstances justifying an award of attorney's fees, 35 U. S.C. § 285.

### Conclusions

The court has jurisdiction of the action for infringement and of the counterclaim for a declaration of invalidity of the patent in suit.

Judgment will be entered declaring that plaintiff's patent number 2,842,772, issued July 15, 1958, in the name of Sydney Littman as an invention on an application Serial No. 404,604, filed January 18, 1954, is invalid and is not infringed by the Tex-O-Graph method or the equipment used to perform it and dismissing with prejudice the counterclaim for unfair competition, antitrust violation, and conspiracy in restraint of trade on consent.

The foregoing constitutes the court's findings in accordance with Rule 52(a), Federal Rules of Civil Procedure.

Settle judgment on notice.