# STATE OF VERMONT

# ENVIRONMENTAL COURT

| | |
|---|---|
| Appeals of Valsangiacomo, et al. } } } } } } | Docket No. 130-8-03 Vtec and 64-4-04 Vtec |

## Decision and Order on Motion for Summary Judgment

In Docket No. 130-8-03 Vtec, Appellants Oreste and Helen Valsangiacomo, Donald and Valencia Giroux, Karen Lane, Joelen Mulvaney, Richard and Joan Parnigoni, Yvette Roy, Madeleine Simonetta, Edward Stanak, Mary Welch and Richard Wobby, Sr., appealed from the July 21, 2003 decision of the Development Review Board (DRB) of the City of Barre, approving an application to demolish a former convent building at 79 Summer Street. In Docket No. 64-4-04 Vtec the same appellants except for Richard Wobby, Sr., appealed from the March 9, 2004 decision of the DRB to approve the demolition of the convent in connection with approval of a site plan for construction of an addition to the school and a two-car garage to serve the rectory, with associated redesign of the on-site vehicular and pedestrian circulation and parking, access to the street, paving, and landscaping, including relocation of an existing statue and memorial garden. Appellants are represented by Stephanie J. Kaplan, Esq.; Appellee-Applicants Roman Catholic Diocese of Burlington and its Parish of St. Monica are represented by William M. O' Brien, Esq.; the City of Barre is represented by Oliver L. Twombly, Esq.

The state statute governing municipal zoning and planning has been amended[1]; for ease of reference, this decision will use the terms 'former' statute and 'current' statute when distinguishing between provisions that have changed or have been renumbered. The Zoning Regulations of the City of Barre have also been amended, effective August 5, 2003, and we will use the numbering in the new ordinance. The substance of the particular regulations applicable to demolition of structures and the review criteria for demolition or site plan ('site design' ) approval has not changed.

The following facts are undisputed unless otherwise noted.

Appellee-Applicants own property located on Summer Street between Seminary Street and West Street, in a Planned Residential zoning district and the Historic Central Business Design Review District #2 overlay zoning district[2]. The property contains at least an existing church building, an existing parochial school building, an existing rectory building, and an existing convent building (no longer in use).

Appellee-Applicants propose to demolish the vacant convent building and to build an addition to the school and to build a two-car garage to serve the rectory, with associated redesign of the on-site vehicular and pedestrian circulation and parking, access to the street, paving, and landscaping, including relocation of an existing statue and memorial garden, and installation of a

larger pipe for water service. Appellee-Applicants do not contest that the project must obtain site plan approval from the City under its zoning ordinance. However, they argue that they may not be precluded from demolishing the vacant convent building, characterizing the demolition approval requirement as stemming from historic preservation rather than from zoning considerations.

In its July 21, 2003, decision, the DRB approved the application to demolish the convent building, finding both that " the proposed demolition was a deterrent to a major improvement that will be a clear and substantial benefit to the community" and that " retention of the convent caused undue financial hardship to the applicant." In its March 9, 2004, decision, the DRB granted site plan approval for the proposed changes, including for the demolition, but made no findings as to the demolition prerequisites and no findings or conclusions as to whether or how either the proposed site plan or the proposed demolition met the review standards in the Zoning Regulations.

Appellants oppose summary judgment, arguing material facts are in dispute. While material facts may be in dispute regarding whether the proposed site plan meets the review standards in the Zoning Regulations, no disputed facts preclude the Court's addressing the issue of whether and to what extent those standards may be applied to a religious land use under state and federal statutory and constitutional law.

Zoning Regulations

Under the Zoning Regulations of the City of Barre, within the Central Business Design Review District, no structure may be " erected, reconstructed, substantially altered, restored, moved or demolished" without prior review by the DRB. § 10.2.03. The present proposal required prior approval for demolition of the convent building, and also for the site design of the buildings, driveways, landscaping and other site features to be built in its place. The many review criteria in § 10.2.08 apply to approval of demolition as well as to approval of a site design; these address the scale and size of buildings, landscaping, pedestrian and vehicular circulation, noise and lighting, among other things.

In addition, § 10.2.07 requires that one or the other of its two provisions must be met before the DRB may even consider whether to approve a demolition under the § 10.2.08 review criteria. The DRB, and hence this Court in this de novo appeal, " may approve the demolition if it finds" either that the structure to be demolished is " a deterrent to a major improvement that will be a clear and substantial benefit to the municipality," § 10.2.07(1), or that retaining the structure " would cause undue financial hardship to the owner." § 10.2.07(2).

State Statute

While the parties have not addressed in their memoranda the effect of 24 V.S.A. § 4413(a) (or former § 4409(a)), we must begin with this analysis because this section makes certain considerations of constitutional law and federal statute unnecessary[3] to address. In the final paragraph of this decision we have provided a schedule for the parties' arguments to be considered if they disagree with the Court's analysis of this issue.

Under 24 V.S.A. § 4413(a), municipalities may only regulate " churches and other places of worship, convents, and parish houses" with respect to:

location, size, height, building bulk, yards, courts, setbacks, density of buildings, off-street parking, loading facilities, traffic, noise, lighting, landscaping, and screening requirements, and only to the extent that regulations do not have the effect of interfering with the intended functional use.

The same limitation is also applicable to public and private schools and other certified educational institutions.

The Vermont Supreme Court recently examined this issue with respect to state-owned facilities under former § 4409(a) in In re Appeal of Department of Buildings and General Services, 2003 VT 92. While the state, church, school or other listed category of applicant must still follow the normal application procedures, id. at ¶ 21, and is still bound by the finality requirement of the statute, id. (citing City of South Burlington v. Department of Corrections, 171 Vt. 587, 590-91 (2000) (mem.)), the municipality is limited to regulating only the listed attributes of the project. The current statutory section incorporated ' location' as one of the attributes the municipality could regulate, consistent with the Vermont Supreme Court's analysis, and added the further limitation that such regulations as applied to a particular project do not have the effect of interfering with the intended functional use of the proposed project.

We must next apply 24 V.S.A. § 4413(a) to each of the two prongs of the Zoning Regulations. First, it is possible that the DRB (and hence this Court in this de novo appeal) could stay within the listed attributes in examining whether a church building slated for demolition would be " a deterrent to a major improvement that will be a clear and substantial benefit to the municipality," § 10.2.07(1). For example, Appellee-Applicants may argue in this case that the site plan after demolition provides a benefit to the traffic circulation pattern in the area. Whether it does or not will depend on the evidence that would be presented at the hearing on the merits. As a matter of law, § 10.2.07(1) on its face does not exceed the authority provided to municipalities under 24 V.S.A. § 4413(a) (or former § 4409(a)).

On the other hand, we do not see any way in which the DRB (and hence this Court in this de novo appeal) could stay within the listed attributes in examining whether the retention of a church structure slated for demolition " would cause undue financial hardship to the owner," § 10.2.07(2), as the financial status of the owner[4] is not at present one of the listed attributes in the statute. Accordingly, § 10.2.07(2) appears to exceed the authority provided to municipalities under 24 V.S.A. § 4413(a) (or former § 4409(a)), and therefore will not be applied by the Court in its de novo consideration of the merits of the demolition application.

Federal Law

Appellee-Applicants argue that the federal Religious Land Use and Incarcerated Persons Act of 2000 (RLUIPA)[5], 42 U.S.C.A. § 2000cc, et seq., prevents the DRB, and hence this Court in this de novo appeal, from denying permission to demolish the vacant convent building. They also

argue that such a denial would violate the Free Exercise Clause of the First Amendment[6] to the U.S. Constitution.

As it pertains to religious land uses, RLUIPA prohibits a municipality from imposing or implementing a land use regulation that " totally excludes religious assemblies from a jurisdiction" or " unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C.A. § 2000cc(b)(3). RLUIPA prohibits a municipality from imposing or implementing a land use regulation in a manner that treats a religious assembly or institution on " less than equal terms" as compared with its treatment of nonreligious assemblies or institutions or in a manner that discriminates against any assembly or institution on the basis of religion or religious denomination. See 42 U.S.C.A. § 2000cc(b)(1)-(2). RLUIPA prohibits a municipality from imposing or implementing a land use regulation in a manner that imposes a " substantial burden" on the religious exercise of a person (including a religious assembly or institution), unless the regulation is the least restrictive means of furthering a compelling governmental interest. See 42 U.S.C.A. § 2000cc(a)(1).

Total Exclusion or Unreasonable Limitation

In this case, the parties do not argue that the Barre ordinance either totally excludes or unreasonably limits religious assemblies or institutions, either on their face or as applied to Appellee-Applicants. Appellee-Applicants' and other churches and school buildings and uses already exist in the City of Barre. Moreover, 24 V.S.A. § 4413(a) ensures that municipal zoning ordinances in Vermont will be applied so as to comply with this section of RLUIPA, 42 U.S.C.A. § 2000cc(b)(3), by limiting the attributes of the religious land use that may be regulated by a municipality.

Regulation on Less-Than-Equal Terms

This also is not a case in which zoning regulations are being imposed in a manner that treats a religious assembly on less than equal terms as compared with a nonreligious assembly or institution or in which zoning regulations are being imposed in a manner that discriminates against any assembly or institution on the basis of religion or religious denomination.

Appellee-Applicants do not claim that they or any religious institutions are or should be exempt from health, safety or social welfare regulations applicable to secular institutions, such as the health regulations applicable to school or restaurant kitchens or the fire safety codes applicable to theaters or town halls. Rather, this section of RLUIPA requires that religious institutions not be discriminated against, as compared with similar secular institutions. In cases decided prior to RLUIPA, the Vermont Supreme Court has recognized that zoning regulations apply to religious land uses in the same way that they apply to secular land uses. In re Baptist Fellowship of Randolph, Inc., 144 Vt. 636 (1984), a church appealed from a trial court order finding that the church's construction of a meetinghouse was subject to the requirements of the state's land use and development act (Act 250). The Vermont Supreme Court upheld the trial court's decision that the church's plans to construct a meetinghouse fell within the definition of " development" under Act 250 and that the State had jurisdiction to review the proposed development and to either grant or deny a permit based on the statutory criteria. Id. at 638. The Court concluded that

neither religious nor other nonprofit land uses, such as hospitals, are excluded from the application of the statute, explaining that the statute addresses the land use and not the particular institutional activity associated with the land use. And see In re Spring Brook Farm Foundation, Inc., 164 Vt. 282, 287 (1995), regarding secular nonprofit organizations.

Substantial Burden on Religious Exercise

Appellee-Applicants argue that the denial of approval to demolish the convent would impose a " substantial burden" on the religious exercise of a person (including a religious assembly or institution) and that it would not represent the least restrictive means of furthering a compelling governmental interest. See 42 U.S.C.A. § 2000cc(a)(1).

First, we note that Appellee-Applicants have not objected to the DRB's having granted approval of the demolition. That is, they do not argue that the DRB had no authority even to consider demolition. That being so, as the Court has not yet acted on the merits of its de novo consideration of this application, it is premature to consider whether denial of demolition of the convent would violate RLUIPA. It is possible that the Court, sitting in place of the DRB, might also grant the demolition approval, or might impose conditions on the site plan other than those addressed by the DRB. See, e.g., Westchester Day School v. Village of Mamaroneck, 280 F. Supp. 230, 242-43 (2003) (complete denial not justified, although imposition of requirements such as additional parking might have been acceptable under RLUIPA).

Moreover, and most importantly, 24 V.S.A. § 4413(a) ensures that municipal zoning ordinances in Vermont will be applied so as to comply with this section of RLUIPA, 42 U.S.C.A. § 2000cc(a)(1), by requiring that the regulations be applied only to the extent that they " do not have the effect of interfering with the intended functional use." That will be the test applied by the Court in its de novo consideration of the merits of this application.

Accordingly, based on the foregoing, Appellee-Applicant's Motion for Summary Judgment is GRANTED in part and DENIED in part. The Court will proceed to consider de novo Appellee-Applicants' application for site plan approval of their proposed project, including demolition of the convent building, under the standards in the Zoning Regulations allowed to be considered by 24 V.S.A. § 4413(a). Because the analysis under 24 V.S.A. § 4413(a) was not anticipated by the parties and is in part dispositive of this motion, we will allow any requests for reconsideration addressed to that issue to be filed so that they are received by the Court on or before October 20, 2004, with responses filed so that they are received by the Court on or before November 9, 2004. The City may, if it wishes, address this issue although it did not previously take a position on the motions. The hearing on the merits of both cases remains scheduled for December 10, 13, 14, 15 and 16, if necessary. However, as the hearing will not need to address the financial hardship evidence of § 10.2.07(2), the Court expects that it will be possible to eliminate at least one or two days of the reserved hearing time. We will hold a telephone conference on October 6, 2004, as already scheduled, to discuss all scheduling issues, and expect the parties to be prepared with the preferred dates for their remaining witnesses.

Done at Barre, Vermont, this 5th day of October, 2004.

_____

Merideth Wright
Environmental Judge

## Footnotes

1.     For effective dates, see 2004, No. 115, §119(d); and 2004, No. 122, §296; 24 V.S.A. §4413 is in effect as of July 1, 2004.

2.     The state zoning enabling statute allows municipalities to create different and separate zoning districts and to create different classifications within any district, including classifications for the regulation, restriction, or prohibition of uses or structures at or near places having unique historical or patriotic interest or value or located within design control districts. See former 24 V.S.A. §4405(a)(3)(F); current §4411(b)(3)(F). Zoning regulations may establish design control districts, including in areas containing structures of historical, architectural or cultural merit or areas with a concentration of community interest, and may provide that no structure may be erected, reconstructed, substantially altered, restored, moved, demolished or changed in use or type of occupancy without approval by the appropriate municipal panel. See former 24 V.S.A. §4407(6); current §4414(1)(E).

3.     See, e.g., State v. Curtis, 157 Vt. 275, 277 (1991) "[W]e must not consider constitutional questions unless the disposition of the case requires it. In re Wildlife Wonderland, Inc., 133 Vt. 507, 520, 346 A.2d 645, 653 (1975). Statutory claims are to be considered first and if dispositive, we will not need to reach the constitutional issues. [Citation omitted.]"

4.     Because of our decision regarding §10.2.07(2), we need not reach whether the civil law or canon law is applicable to determine whether the parish, the diocese, or some other administrative level of the Church would be considered the 'owner' for the purposes of this determination.

5.     The constitutionality of this federal statute is well beyond the scope of the present discussion. Compare Elsinore Christian Center v. City of Lake Elsinore, 291 F. Supp. 2d 1083 (C.D.Cal. 2003); Shepherd Montessori Center Milan v. Ann Arbor Charter Tp., 675 N.W.2d 271, 278 (Mich.App. 2003); Cutter v. Wilkinson, 349 F.3d 257, 268 (C.A.6 (Ohio) 2003) and Steele v. Guilfoyle, 76 P.3d 99, 102 (Okla.Civ.App. Div. 1,2003); with Murphy v. Zoning Comm'n of the Town of New Milford, 289 F. Supp. 2d 87 (D.Conn. Sept. 30, 2003) and Westchester Day School v. Village of Mamaroneck, 280 F. Supp. 2d 230 (S.D.N.Y. 2003).

6.      A statute or regulation that gives special exemptions or preferences to religious uses qua religious uses may violate the Establishment Clause of the First Amendment, while a statute or regulation that unduly burdens the free exercise of religion may violate the Free Exercise Clause. RLUIPA is the most recent federal attempt to steer an appropriate course between those two constitutional issues inherent in the local regulation of religious institutions.