Argued and submitted June 15, reversed in part; otherwise affirmed on petition; on cross-petition, reversed and remanded in part and otherwise affirmed July 26, 1995

George W. FENCE,
*Respondent - Cross-Petitioner,*

*v.*

JACKSON COUNTY,
*Petitioner - Cross-Respondent.*

(94-137; CA A88196)

900 P2d 524

Georgia L. Daniels argued the cause for petitioner - cross-respondent. With her on the briefs was Jackson County Counsel.

Tonia L. Moro argued the cause and filed the brief for respondent - cross-petitioner.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

Respondent Fence appealed to LUBA from Jackson County's amendment of its land development ordinance that added provisions regulating outdoor "mass gatherings." He contended that some or all of the county's regulations are preempted by ORS 433.735 to ORS 433.770, that the regulations are inconsistent with the federal Religious Freedom Restoration Act of 1993 (42 USC § 2000bb, *et seq*), and that they violate religious and communicative protections of the federal and state constitutions because of their effects on Native American ceremonies and activities in which respondent wishes to engage. LUBA agreed with some of respondent's arguments, rejected others and remanded the enactment. The county seeks review and respondent cross-petitions. We affirm in part and reverse in part.

As LUBA did, we conclude that a broad overview of the statutory regulations of mass gatherings is important to an understanding of the case. We take the following summary from LUBA's opinion:

"ORS 433.735(1) defines 'outdoor mass gathering' as follows:

" '[U]nless otherwise defined by county ordinance, * * * an actual or reasonably anticipated assembly of more than 3,000 persons which continues or can reasonably be expected to continue for more than 24 consecutive hours but *less than 120 hours within any three month period*, and which is held primarily in open spaces and not in any permanent structure.' (Emphasis supplied.)

"In addition, another provision within the outdoor mass gathering statute, ORS 433.763, provides specific requirements for large gatherings of people that are *not* covered by the above quoted ORS 433.735 outdoor mass gathering definition. Specifically, ORS 433.763 regulates gatherings of more than 3,000 people for *more than 120 hours within any three month period*. ORS 433.763 requires county approval of a permit for gatherings of more than 120 hours duration where the standards of ORS 433.750 and certain zoning standards are met. For ease of reference from this point forward, we refer to the outdoor mass gatherings defined in ORS 433.735(1) as gatherings of *less* than 120 hours duration, and to the gatherings regulated by ORS 433.763 as gatherings of *more* than 120 hours in duration." (Emphasis in original; footnote omitted.)

■    The threshold issue that the parties dispute is whether LUBA had jurisdiction over the appeal. The county maintains that LUBA did not have jurisdiction over some of the issues, at least, because they pertain to regulation of matters unrelated to land use, and are therefore not "land use decisions." We agree with the county that the fact that a regulation is embodied in something called a land use ordinance does not convert it into a land use regulation, subject to LUBA's review, if the substance of the regulation clearly pertains to something other than land use. However, that is not the case here. Under ORS 433.763, permits for gatherings of more than 120 hours duration are to be issued by county planning commissions, upon determinations, *inter alia*, that the proposed gathering "[i]s compatible with existing land uses" and "[d]oes not materially alter the stability of the overall land use pattern of the area." It is true that the regulations also apply to several matters *in addition* to land use. However, we are aware of nothing that requires a county to divide its regulations of a particular matter among different ordinances that variously seem best to accord with the specific subjects that are embraced within the general topic. Similarly, if the result is avoidable, a person challenging the enactment should not have to proceed in different forums that have different specific subject matter jurisdiction. The regulations in question here have a significant nexus with land use. The county was free to and did regulate mass gatherings through its land use ordinance, and LUBA had jurisdiction.

■    We turn to the merits. Three of the county's contentions are that LUBA erred by holding certain specific provisions of its ordinance to be inconsistent with the state statutes, and by concluding generally that the statutes "completely occup[y] the field of regulation of outdoor mass gatherings of less than 120 hours duration." We agree with the county that LUBA's view of the preemptive effects of the statutes is too broad. ORS 433.765 provides:

"Ordinances or regulations of a county enacted under a county charter adopted pursuant to section 10, Article VI, Oregon Constitution, and not inconsistent with ORS 433.735 to 433.770 and 433.990 (7) or any rules adopted under ORS 433.735 to 433.770 and 433.990 (7), are not superseded by ORS 433.735 to 433.770 and 433.990 (7) or

such rules. Nothing in ORS 433.735 to 433.770 and 433.900 (7) or any rules adopted under ORS 433.735 to 433.770 and 433.990 (7) precludes the right of a county to enact ordinances or regulations under a county charter if such ordinances or regulations are not inconsistent with ORS 433.735 to 433.770 and 433.990 (7) or any rules adopted under ORS 433.735 to 433.770 and 433.990 (7)."[1]

County regulation is also referred to in ORS 433.735(1) and ORS 433.767.

Accordingly, although the county may regulate the subject, its regulations may not be inconsistent with the statutes. Of the three specific regulations that LUBA concluded were at odds with the statutes, and which are subjects of the county's assignments of error, we agree with LUBA in one instance and disagree with it in the other two.

■  Section 620.04(b) of the ordinance authorizes a fee of up to $5,000 for county services, such as police, provided to a mass gathering. ORS 433.750(6) provides:

"A county governing body may charge permit applicants a fee reasonably calculated to reimburse the county for its reasonable and necessary costs in receiving, processing and reviewing applications for permits to hold outdoor mass gatherings. However, a fee authorized by this subsection shall not exceed $5,000 and shall not be charged when the governing body finds, by a preponderance of the evidence presented to the governing body, that the applicant is unable to reimburse the governing body."

LUBA concluded that, because the statute refers only to application processing fees, the service fees under the ordinance are impermissible. We do not agree that the county provision is invalid for that reason.[2] ORS 433.750(6) does not purport to proscribe fees for services *other* than the ones described in that statute. Therefore, the state and county provisions are not inconsistent with one another. Because we have also concluded that the statutes are not preemptive as occupying the area of regulation, we hold that ORS

---

[1] Jackson County is a home rule county under Article VI, section 10.

[2] As in the case of the other provision that we conclude LUBA erred by holding to be inconsistent with the statutes, however, we do not decide whether the provisions are unlawful for reasons that LUBA did not reach or that the parties do not raise.

433.750(6) does not preempt the local provision and that LUBA erred in invalidating section 620.04(b).

■       LUBA also invalidated section 620.05(a)(5) of the ordinance. That provision purports to establish a blanket $1 million liability insurance requirement for *all* mass gatherings of less than 120 hours duration. In contrast, ORS 433.755(1) provides, as relevant:

> "If the county governing body determines upon examination of the permit application that the outdoor mass gathering creates a potential for injury to persons or property, the county governing body may require organizers to obtain an insurance policy in an amount commensurate with the risk, but not exceeding $1 million. The policy of casualty insurance shall provide coverage against liability for death, injury or disability of any human or for damage to property arising out of the outdoor mass gathering. The county shall be named as an additional insured under the policy."

LUBA reasoned that, contrary to the county's across-the-board requirement, the statute *mandates* a case-by-case assessment as part of the permit application process. We agree with LUBA, and we reject the county's assignment concerning section 620.05(a)(5).

■       In its next assignment of error, the county argues that LUBA was incorrect in holding section 620.05(b) of the ordinance to be contrary to ORS 433.770(1). The county provision authorizes the sheriff to order a gathering to disperse under certain circumstances. The statute provides:

> "In addition to and not in lieu of the maintenance of other actions for any violation of ORS 433.745, the district attorney for the county in which an outdoor mass gathering is to be held may maintain an action in any court of general equitable jurisdiction to prevent, restrain or enjoin any violation of ORS 433.745."

LUBA reasoned:

> "ORS 433.770(1) makes it clear that with regard to specific violations of the *mass gathering statute or its implementing local regulations*, the only remedy is injunctive relief authorized by a court. In the absence of a court order authorizing dispersal, there is no independent authority in ORS 433.770(1) for a county sheriff to order dispersal of a covered gathering because the sheriff believes a violation of the mass

gathering statute or implementing ordinance has occurred. Therefore, we believe that LDO 620.05(b), which purports to authorize the county sheriff to order dispersal of an outdoor mass gathering if he believes such gathering is not in 'compliance with all applicable state and local laws,' is overly broad." (Emphasis in original.)

We disagree. ORS 433.770(1) refers in terms only to violations of ORS 433.745. The latter statute, in turn, relates only to engaging in mass gathering activities without a permit. The scope of problems at which the local provision seems to be aimed is far broader, and applies to a spectrum of law enforcement concerns with which the statute does not purport to deal. Moreover, by its terms, ORS 433.770(1) makes the remedy it establishes nonexclusive. If section 620.05(b) is invalid, it is not because it is in conflict with ORS 433.770(1). We agree with the county that LUBA erred in its ruling on section 620.05(b).

In its final assignment, the county challenges LUBA's determination that the ordinance, as it pertains to respondent, does not demonstrate compliance with the federal Religious Freedom Restoration Act of 1993 (the Act). Section 3 of the Act provides, as pertinent:

"(a) **In general.** Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

"(b) **Exception.** Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person —

"(1) is in furtherance of a compelling governmental interest; and

"(2) is the least restrictive means of furthering that compelling governmental interest." 42 USC § 2000bb-1.

Section 6(a) of the Act provides:

"**In General.** This Act applies to all Federal and State law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after the enactment of this Act." 42 USC § 2000bb-3.

A party invoking the Act's protections must make a *prima facie* showing that the challenged measure substantially burdens his or her free exercise of religion. *See, e.g., Bryant v. Gomez,* 46 F3d 948 (9th Cir 1995). Once such a showing is made, the government must demonstrate that the law's application to that person is the least restrictive means of furthering a compelling state interest. 42 USC § 2000bb-1(b).

Here, LUBA determined, at least implicitly, that respondent had made a *prima facie* showing of substantial burden. LUBA further determined that, because "it is difficult at best to determine which regulations in the county comprehensive plan apply and how those regulations are satisfied," the county has not met its rebuttal burden of demonstrating that the ordinance represented the least restrictive means to achieving a compelling state interest.

■ Without responding directly to LUBA's reasoning, the county argues that compliance with the Act should only be measured by "reference to a particular application for a particular religious use," and that respondent's challenge to the ordinance can present "no justiciable controversy," until he has sought and been denied a permit for a particular religious activity. We disagree. Nothing in the Act requires a person to submit to an allegedly unconstitutional permitting scheme, or to be subjected to an enforcement action, with respect to a particular activity, before being able to challenge a law as impermissibly burdening the free exercise of religion. Rather, the Act applies broadly "to all Federal and State law, *and* the implementation of that law, whether statutory or otherwise * * *." (Emphasis supplied.) The conjunctive formulation of the statute makes it clear that a person challenging a law's compliance with the Act need not await a formal implementing action that denies a specific use. 42 USC § 2000bb-3(a). Accordingly, the county's final assignment does not demonstrate error.

In his cross-petition, respondent first argues that LUBA erred by not addressing his constitutional contentions and holding the ordinance to be unconstitutional. LUBA explained in a footnote:

> "[B]ecause we dispose of this appeal on statutory grounds, we need not reach [respondent's] constitutional arguments."

Respondent contends, in effect, that LUBA rejected several of his statutory arguments, thereby leaving intact portions of the ordinance at which his constitutional arguments are partly aimed. He is correct. Accordingly, we conclude that consideration of the constitutional issues respondent raises is necessary, and we remand for LUBA to address the issues that are germane to the parts of the ordinance that remain viable in the light of LUBA's opinion and ours.[3]

Respondent's second assignment of error does not require discussion.

On petition, invalidation of ordinance sections 620.04(b) and 620.05(b) reversed, and otherwise affirmed; on cross-petition, reversed and remanded for consideration of constitutional issues, and otherwise affirmed.

---

[3] If LUBA concludes that it is likely that some or all of the constitutional issues will be substantially affected by the county's proceedings on remand, we do not foreclose it from holding that the issues in that category are premature at this time.