Argued and submitted August 18, affirmed October 15, 2003

## LANDSEM FARMS, LP,
*Petitioner,*

*v.*

## MARION COUNTY,
*Respondent.*

2002-160; A121871

78 P3d 103

Donald M. Kelley argued the cause for petitioner. With him on the brief were Patrick E. Doyle and Kelley & Kelley.

Jane Ellen Stonecipher argued the cause and filed the brief for respondent.

Before Wollheim, Presiding Judge, and Brewer and Schuman, Judges.

BREWER, J.

**BREWER, J.**

Petitioner Landsem Farms, LP, seeks review of a Land Use Board of Appeals (LUBA) order remanding Marion County's dismissal of an application for a conditional use permit to hold gatherings on a private airfield. Petitioner contends, among other arguments, that ORS 197.015(10)(d), which exempts certain gatherings from land use regulation, applies to its conditional use application. We affirm.

The subject property is a 20-acre parcel of land that is presently zoned Exclusive Farm Use (EFU) under Chapter 136 of the Marion County Zoning Ordinance (MCZO). The property carries the additional designation of "high-value farmland." EFU zones permit farm use and certain other uses. See ORS 215.283. A high value farmland designation further limits possible uses of EFU-zoned property, and it subjects the use of such property to additional scrutiny under Land Conservation and Development Commission (LCDC) rules. See OAR 660-033-0090; OAR 660-033-0120. A "personal use airport" is a conditional use within an EFU zone under MCZO 136.230(3)(i) (2002), renumbered as MCZO 136.050(h) (2003). See also ORS 215.283(2)(h).

The property previously was zoned for "Residential Agricultural" use. In 1972, when the property was zoned for that use, the county issued a conditional use permit for a private airfield on the property. As developed, the property contains a dwelling, barn, four hangars, a hangar under construction, and an airstrip. In August 2001, petitioner sought an administrative determination from the county that it could expand its airport operation. Petitioner proposed to conduct "fly-ins" and "bag drop" activities on the property.[1] A hearing officer issued an order denying that request on March 1, 2002. In the order, the hearing officer reviewed the historical use of the property and concluded that the airfield operation could not be expanded beyond the scope authorized under the 1972 conditional use permit. The hearing officer

---

[1] Although the terms are not described in detail in the record, we understand "fly-in" to refer to a gathering of persons who travel by aircraft to the gathering. A "bag drop" is described as a "competition" in the hearing officer's order, and we understand it to refer to a contest involving dropping objects from aircraft with the intent of striking a target on the ground.

determined that the proposed activities were not incidental to the normal operation of the airport and were not otherwise permitted under ORS 836.616(2), which authorizes certain uses, including "aviation recreational and sporting activities" within airport boundaries.[2]

Petitioner then submitted an application for a conditional use to the county, "under protest," in which it proposed to "hold up to twenty-five (25) social gatherings per year." The application described the gatherings as follows:

"(1) Except for those uses which would require the landing strip, e.g., fly-ins, bag drops, etc., the social gatherings would be limited to the area immediately surrounding the private residence, the hangers and the parking area.

"(2) These gatherings would not be open to the general public.

"(3) There would be no more than twenty-five (25) gatherings per year [later reduced to 15].

"(4) The maximum number of people allowed to attend any gathering would be two hundred fifty (250).

"(5) Gatherings would be limited to the hours of 8:00 a.m. until 10:00 p.m. in the evening."

Petitioner asserted that the proposed events were exempt from land use regulation under ORS 197.015(10)(d) and that they were authorized under airport planning statutes. *See* ORS 836.600 to 836.630.

ORS 197.015(10)(d) exempts from the definition of "land use decision" authorization of "an outdoor mass gathering as defined in ORS 433.735, or other gathering of fewer than 3,000 persons that is not anticipated to continue for more than 120 hours in any three-month period[.]" ORS 433.735(1), in turn, provides:

" 'Outdoor mass gathering,' unless otherwise defined by county ordinance, means an actual or reasonably anticipated assembly of more than 3,000 persons which continues

---

[2] ORS 836.625(1) provides that "limitations on uses made of land in exclusive farm use zones described in ORS 215.213 and 215.283 do not apply to the provisions of ORS 836.600 to 836.630 regarding airport use."

or can reasonably be expected to continue for more than 24 consecutive hours but less than 120 hours within any three-month period and which is held primarily in open spaces and not in any permanent structure."

In support of its conditional use application, petitioner argued that, under ORS 197.015(10)(d), any number of gatherings of fewer than 3,000 people lasting for a cumulative total of up to 120 hours in a three-month period were exempt from land use regulation. The county hearing officer rejected that interpretation of the statute. The hearing officer concluded that the statute allows only one unregulated gathering within a three-month period. She opined that the petitioner's interpretation "ignores the *three month period* part of the regulation." (Emphasis in original.) The hearing officer also rejected petitioner's argument that the proposed activities are authorized under ORS 836.616(2)(a). She characterized the activities as social events, not activities incidental to the normal operation of an airport. She concluded that "[t]he social gatherings, as described by applicant, are not allowed, conditionally permitted or exempt uses under land use, mass gathering or airport planning laws."

Petitioner appealed the county's decision to LUBA, before which it renewed its statutory arguments. LUBA also rejected petitioner's interpretation of ORS 197.015(10)(d). It concluded that, in order to give effect to the phrase "in any three-month period," the statutory exemption must be deemed to apply to a single gathering on the property in any three-month period. LUBA also rejected petitioner's contention that ORS 836.616(3) authorized the county to approve commercial uses at airports on a case-by-case basis where, as here, applicable county land use regulations do not authorize such uses.[3] In so concluding, LUBA relied on the county's

---

[3] ORS 836.616(1) requires LCDC to adopt rules for uses and activities allowed within airports and airport boundaries as identified in ORS 836.608(2) and ORS 836.610(1). ORS 836.616(2) lists uses that local government land use regulations "shall authorize" within airport boundaries. The uses include "customary and usual aviation-related activities," aircraft service, maintenance and training, aircraft sales, air passenger and freight services, and, under ORS 836.616(2)(j), "[a]viation recreational and sporting activities." ORS 836.616(3), in part, lists uses—including commercial and industrial uses—that local governments may authorize in addition to those airport related uses in subsection (2) "where such uses are consistent with applicable provisions of the acknowledged comprehensive plan, statewide land use planning goals and commission rules and where the uses

interpretation of its ordinance as prohibiting the operation of a special events business at an airport within the EFU zone.

LUBA accepted the county's concession that the proposed fly-in and bag drop events were authorized as conditional airport uses under ORS 836.616(2)(j) and OAR 660-013-0100(8). However, it stated that it was unclear whether some of the social gatherings that petitioner proposed to hold "might be accurately described as 'incidental' to the other activities specified at ORS 836.616(2)(a)." Because, in its view, petitioner had not described the nature of the social gatherings in sufficient detail, LUBA concluded that it could not "resolve the parties' largely hypothetical dispute over the degree of incidental social activity that might be permissible on the subject property in conjunction with any particular activity that the county must authorize under ORS 836.616(2)." Accordingly, LUBA sustained in part petitioner's assignment of error based on ORS 836.616 and remanded to the county the issue whether the proposed social events were "incidental to the normal operation of an airport."

We affirm without discussion all but one of LUBA's conclusions. We write only to address petitioner's argument that LUBA erred in concluding that its proposed activities were not exempt from land use regulation under ORS 197.015(10)(d). We address that issue now because it would be unnecessary to remand the case to the county to determine whether petitioner's proposed activities were incidental to normal airport operations under ORS 836.616, if those activities were wholly exempt from land use regulation under ORS 197.015(10)(d).

LUBA summarized its understanding of ORS 197.015(10)(d) as follows:

"1.    Outdoor mass gatherings ((1) 3,000 or more people, (2) lasting between 24 and 120 hours, (3) occurring no more frequently than once every three months, (4) held in open spaces) are not subject to county land

do not create a safety hazard or limit approved airport uses." As noted, ORS 836.625(1) provides that "limitations on uses made of land in exclusive farm use zones described in ORS 215.213 and 215.283 do not apply to the provisions of ORS 836.600 to 836.630 regarding airport uses."

use regulations. Moreover, county decisions on applications for permits for outdoor mass gatherings are not land use decisions subject to LUBA review.

"2.  Extended mass gatherings ((1) 3,000 or more people, (2) lasting more than 120 hours, (3) occurring no more frequently than once every three months, (4) held in open spaces) are subject to county land use regulations. County decisions on permit applications for extended mass gatherings are land use decisions subject to LUBA review.

"3.  Small gatherings ((1) attracting fewer than 3,000 persons, (2) lasting fewer than 120 hours, (3) occurring no more frequently than once every three months) are not subject to county land use regulations. Any county decisions regarding such small gatherings are not land use decisions subject to LUBA review."

On review, petitioner again asserts that ORS 197.015(10)(d) exempts from land use regulation gatherings of fewer than 3,000 people that do not cumulatively exceed 120 hours in any three-month period. Petitioner argues the "120 hours in any three-month period" is a limit on the cumulative hours of multiple gatherings during a three-month period, rather than a limit on the hours of a single gathering held within that period. Petitioner explains:

"Indeed, the text of ORS 197.015(10)(d) demonstrates that the legislature did not intend to limit landowners to only one gathering in any three month period. While the statute provides clear limits on the number of attendees and the duration of a gathering, it is silent as to frequency. If the legislature had meant to limit landowners to one gathering it would have said so explicitly. LUBA erred by inserting what had been clearly omitted by the legislature."

Alternatively, petitioner argues that the statute authorizes an unlimited number of events, provided that no one event exceeds 3,000 people and 120 consecutive hours in any three-month period. According to petitioner, "if the legislature had intended to limit the mass gatherings to one gathering not to exceed 120 hours every three months, as LUBA found, there would be no need for a reference to a three-month period." Petitioner asserts that, if the statute is ambiguous, its legislative history shows that it was intended

to permit multiple gatherings. According to petitioner, "The legislature was not focused on frequency but was instead seeking to free up outdoor gatherings from burdensome (and likely unconstitutional) regulation from the counties."

The county responds that only one interpretation of the statute gives meaning to its entire text, namely, that the phrase "within any three-month period" must modify the subject of the sentence, "gathering." According to the county, because "gathering" is singular, and not plural, the remainder of the statute merely elucidates the nature of that single gathering. In order to be exempt, the county argues, a gathering either must be "an outdoor mass gathering as defined in ORS 433.735, or other gathering of fewer than 3,000 persons that is not anticipated to continue for more than 120 hours in any three-month period."

■ In construing the statute, we follow the methodology prescribed by *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Our beginning point, the statutory text, is not a model of clarity. The primary difficulty lies in ascertaining the meaning of the phrase "not anticipated to continue for more than 120 hours in any three-month period[.]" ORS 197.015(10)(d). Petitioner asserts that that phrase refers to multiple events with a total accumulated hour limit, whereas the county contends that it refers to a single event of not more than 120 hours. Neither interpretation meshes seamlessly with the statute's wording. We conclude, on balance, however, that the legislature intended, in enacting ORS 197.015(10)(d), to exempt from land use regulation a single gathering within a three-month period, subject to the size and durational limitations provided.

We first examine textual clues to the statute's meaning. It is significant that the legislature used a singular noun as the subject of the provision. The exemption is authorized for a "*mass gathering* as defined in ORS 433.735 or other *gathering* * * *." ORS 197.015(10)(d) (emphasis added). Given that singular subject, the conditions that follow, that is, the limits on the number of persons who may attend and duration of the gathering, more likely than not are intended to apply to a single gathering, rather than to constitute a cumulative restriction on multiple gatherings.

■ Moreover, that construction is consistent with the context in which the statute appears. The related statutes governing mass gatherings use the same construction, that is, a singular subject ("an assembly" or "a gathering"), followed by a reference to the size and duration of the gathering. *See* ORS 433.735(1); ORS 433.763(1). More generally, ORS chapter 197 establishes Oregon's comprehensive land use regulatory scheme from which ORS 197.015(10)(d) grants an exemption for certain gatherings. Petitioner's construction would create a broad exemption indeed, irrespective of the zoning of the subject property; for example, it would allow, within a three-month period, ten twelve-hour gatherings or twenty six-hour gatherings of up to 3,000 people each. It seems unlikely that the legislature intended to create such a broad exemption for multiple gatherings, regardless of their nature, to be held on land zoned for other purposes, such as exclusive farm use.[4]

To the extent that resort to it is necessary, the relevant legislative history supports our construction of the statute. ORS 197.015(10)(d) was enacted in 1999. Or Laws 1999, ch 866, § 1. Nothing in the legislative record specifically addresses the 120-hour limit. Nor is there any evidence as to the significance, if any, of the use of the singular subject, "gathering." However, a statement made by a representative of the Department of Land Conservation and Development is marginally helpful. That representative, Ron Eber, told the Senate Rules and Elections Committee that the statute would not "authorize anything * * * that should normally come within the land use statutes," and that the bill would "make it clear that those activities, the short duration, temporary kind of activities, are not subject to the zoning regulations." That statement suggests that ORS 197.015(10)(d) properly is understood as creating a narrow exemption from

---

[4] Petitioner remonstrates that, under LUBA's interpretation of ORS 197.015(10)(d), a landowner is limited to one gathering in any 120-day period, whether social, political, or religious in nature. Petitioner argues that "[w]here ORS 197.015(10)(d) prohibits the holding of a second rally or ceremony (as under LUBA's interpretation) it would be deemed unconstitutional." However, petitioner offers no authority for the proposition that a statute exempting certain gatherings from land use regulation under limited circumstances that do not discriminate with respect to the character of the gathering somehow impairs a constitutionally protected right. We decline to further consider that undeveloped argument.

land use regulation. Petitioner's proposed construction is inconsistent with that understanding.[5]

In sum, the text, context, and legislative history of ORS 197.015(10)(d) indicate that it exempts from land use regulation only a single gathering of the described size and duration within any three-month period. LUBA correctly concluded that ORS 197.015(10)(d) did not exempt petitioner's proposed activities from county land use regulation.

Affirmed.

---

[5] Petitioner argues that ORS 197.015(10)(d) codified this court's opinion in *Fence v. Jackson County*, 135 Or App 574, 900 P2d 524 (1995). Petitioner's purpose in citing the case is somewhat unclear because nothing in our opinion in *Fence* suggests that we construed any statute to authorize multiple gatherings within the statutorily prescribed three-month period. The question of how many gatherings might be held under the disputed language was not at issue in *Fence*.