Argued and submitted October 6, 2003, remanded with instructions to affirm city's denial of church's application without prejudice to filing of new or amended application March 24, 2004

## CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,
*Respondent,*

*v.*

## CITY OF WEST LINN,
*Petitioner,*

*and*

## UNITED STATES OF AMERICA,
*Intervenor on Judicial Review,*

*and*

## Robert FULTON,
Susan Fulton, Gregg Crawford, Holly Crawford, Walter Swanson, Kathi Swanson, Dale Krug, Colleen Krug and Steven Wilkes,
*Intervenors - Respondents below.*

2002-155; A122194

86 P3d 1140

Timothy V. Ramis argued the cause for petitioner. With him on the brief was Ramis Crew Corrigan & Bachrach, LLP.

I. Franklin Hunsaker argued the cause for respondent. With him on the brief were Bullivant Houser Bailey PC, and James H. Bean and Lindsay Hart Neil & Weigler LLP, and Matthew K. Richards and Kirton & McConkie.

Lowell V. Sturgill, Jr., argued the cause for intervenor on judicial review. With him on the brief were Mark Stern, Washington, D.C., and Peter D. Keisler, Assistant Attorney General, and Herbert C. Sundby, Department of Justice, Office of U.S. Attorney.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

The Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints (the church) applied to the City of West Linn (the city) for a conditional use permit to build a church meetinghouse in a residential neighborhood of the city. The city denied the application. The church appealed to LUBA, which determined that the city's decision violated certain provisions of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 USC §§ 2000cc - 2000cc-5 (2000) (set out in pertinent part below). LUBA also determined that the relevant provisions of RLUIPA are constitutional under the First Amendment and Fourteenth Amendment to the United States Constitution. LUBA remanded the matter to the city for consideration of whether the application could be approved under suitable conditions of approval.

The city seeks judicial review of LUBA's decision, asserting that LUBA erred in applying RLUIPA and in determining that RLUIPA is constitutional.[1] The United States intervenes for the purpose of defending the constitutionality of RLUIPA. We conclude that the city's decision did not violate RLUIPA and therefore remand to LUBA without reaching the constitutional question.[2]

## I. THE PROCEEDINGS BELOW

We take the relevant facts from LUBA's order and the record. The subject property is a 5.64-acre tract consisting of two lots zoned Single Family Residential, 10,000-square foot minimum lot size (R-10). There is an existing dwelling in the northwest corner of the property. The property is bordered on the north by a vacant field used for agricultural purposes; on the south by Rosemont Road, a designated arterial; on the east by Shannon Road, a local street

---

[1] The church has not challenged RLUIPA on constitutional grounds.

[2] This case was argued and submitted on October 6, 2003. Following oral argument, the parties stipulated to a stay of the appeal for the purpose of allowing the parties to enter into mediation. The parties subsequently failed to agree to a stipulation for remand or dismissal of the appeal. On December 22, 2003, this court reactivated the appeal and approved a reasonable extension of the 91-day period for decision provided in ORS 197.855. *See* ORS 197.860 (authorizing those procedures).

with a treed median; and on the west by Miles Drive, a local street that ends north of Rosemont Road. The surrounding area is generally developed with single-family dwellings.

Under the city's Community Development Code (CDC), certain uses, such as single-family dwellings, are permitted outright in R-10 zones. In addition, "religious institutions" are permitted in R-10 zones, subject to conditional use approval. For conditional uses, CDC 11.080 provides that "the appropriate lot size for a conditional use shall be determined by the approval authority at the time of consideration of the application based upon the criteria set forth in [CDC 60.070.A.1 and CDC 60.070.A.2]." CDC 60.070.A.1 requires in part that the site size and dimensions provide "[a]dequate area for aesthetic design treatment to mitigate any possible adverse effect from the use on surrounding properties or uses." CDC 60.070.A.2 requires a finding that the "characteristics of the site are suitable for the proposed use considering size, shape, location, topography, and natural features."

The church proposed to divide the subject property to create a 3.85-acre parcel on the eastern two-thirds of the property, bordering Rosemont Lane on the south and Shannon Lane on the east. On that 3.85-acre parcel, the church proposed to construct a 16,558-square foot, 28-foot-high, single-story structure, surrounded on three sides by parking lots providing 179 parking spaces. The proposed meetinghouse and parking lots would occupy 2.02 acres, with the remainder of the 3.85-acre parcel consisting of open landscaped areas, buffer areas, and a drainage swale. The setback between the rear property line and the nearest parking area would be 26 feet; a buffer area between the parking lot and Shannon Lane would be as narrow as 30 feet. The meetinghouse was intended to serve two "wards" or congregations with a current membership totaling 949 persons; on Sundays, an estimated 540 persons would attend two staggered services with an approximately one-hour period during which attendees of both services would be present.[3] In addition to Sunday services, smaller groups would use the meetinghouse for short periods during the week.

---

[3] Most of the members of the congregations currently attend church in Lake Oswego, which borders West Linn. However, the meetinghouses in Lake Oswego and other nearby communities are crowded.

The church submitted a conditional use application accompanied by a proposed site plan. City planning staff recommended that the planning commission approve the application based on various conditions to which the church agreed, including revision of the landscaping plan to screen the parking lot from Shannon Lane more effectively. The planning commission conducted three public hearings at which a number of neighboring landowners testified in opposition. On September 5, 2002, the commission voted to deny the application on the grounds that no buffer could adequately screen the parking lot from surrounding residences; that a building of the proposed size was not appropriate in a residential zone; that local roads were not adequate to serve the proposed meetinghouse; and that the meetinghouse was not compatible with adjoining residential uses.

The church appealed the planning commission's decision to the city council, which conducted three additional public hearings and, on October 28, 2002, denied the appeal. The city concluded that the proposed use did not comply with CDC 60.070.A.1.b, pertaining to adequacy of a design for purposes of mitigating possible adverse effects on surrounding properties and uses, because, among other reasons, the property was too small and too flat, and the proposed landscaping was insufficient, to provide adequate buffering between the building and its parking lot, on the one hand, and adjacent residential properties, on the other. Again citing the size of the property, its flat topography, and its location in a residential neighborhood, the city also concluded that the proposed design violated CDC 60.070.A.2, pertaining to the suitability of the site's characteristics for the proposed use. The city also concluded that the proposed meetinghouse did not comply with CDC 55.100.B.6.b, pertaining to compatibility with existing development, because the building's scale and mass were substantially greater than those of surrounding residences and those differences were not adequately compensated for by buffering or screening; with CDC 55.100.C, pertaining to the provision of buffers between different types of uses, because, among other buffering deficiencies, the proposed 30-foot buffer between the parking lot and Shannon Lane provided insufficient light, vision, and noise buffering; or with CDC 55.100.D.3, setting out noise standards.

The city also addressed the church's argument that denial of its application would violate RLUIPA. The city concluded that denial did not impose a "substantial burden" on the church's religious exercise within the meaning of RLUIPA, because additional land was available to the church around the site and the church "might have obtained approval if the site were larger"; in addition, according to the city, it would have denied any application having the proposed characteristics. The city also concluded that it had a compelling governmental interest within the meaning of RLUIPA in maintaining the quality of its residential neighborhoods. It therefore concluded that denial did not violate RLUIPA and denied the application.[4]

The church appealed to LUBA. It argued that the city's findings of noncompliance with CDC 60.070.A.1.b, CDC 60.070.A.2, CDC 55.100.B.6.b, CDC 55.100.C, and CDC 55.100.D.3 were not supported by substantial evidence in the record.[5] The church also contended that the city's denial of its application violated RLUIPA. The city responded that substantial evidence supported the city's findings of noncompliance and that denial of the application did not violate RLUIPA. The city also argued that, if interpreted and applied in the manner urged by the church, RLUIPA would violate the Establishment Clause of the First Amendment[6] and the Enforcement Clause of the Fourteenth Amendment.[7]

---

[4] The city's complete discussion of the RLUIPA issue is set out in the Appendix.

[5] The church also argued that the city misconstrued the meaning of CDC 55.100.D.3. The city ultimately conceded that the ambient noise standards specified in that provision were not applicable to the church.

[6] The First Amendment to the United States Constitution provides, in part, that, "Congress shall make no law respecting an establishment of religion[.]"

[7] The Fourteenth Amendment to the United States Constitution provides, in part:

"Section 1. * * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

"* * * * *

"Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

LUBA determined that the city's findings pertaining to noncompliance with the described CDC provisions were supported by evidence in the record. It concluded, however, that the city's denial of the church's application violated RLUIPA. In that regard, LUBA first determined that RLUIPA was applicable to the city's decision notwithstanding that the decision was based on application of preexisting standards and criteria. LUBA noted that the city's conditional use standards and criteria were "extremely subjective" and afforded the city "significant discretion to approve or deny the application," "augmented" by the deferential standard of review applicable under ORS 197.829(1) to the city's interpretation of its own ordinances.[8] LUBA concluded that the city's decision therefore involved an "individualized assessment" within the meaning of that term in RLUIPA. LUBA also concluded that the city's application to the property of its design review criteria implicated a "use" of land and that RLUIPA therefore was applicable to those aspects of the city's decision.

As to whether the city's decision imposed a "substantial burden" on the property, LUBA noted that RLUIPA expressly defines religious exercise to include "[t]he use, building, or conversion of real property for the purpose of religious exercise" and that the "centrality" of a church building to the church's religious exercise therefore is irrelevant. LUBA concluded that the denial of the church's application constituted a substantial burden for several reasons: (1) it was based on "highly discretionary standards"; (2) there were no zones in the city in which the church's proposed use would be permitted outright; (3) the record did not demonstrate

---

[8] ORS 197.829(1) provides:

"The Land Use Board of Appeals shall affirm a local government's interpretation of its comprehensive plan and land use regulations, unless the board determines that the local government's interpretation:

"(a) Is inconsistent with the express language of the comprehensive plan or land use regulation;

"(b) Is inconsistent with the purpose for the comprehensive plan or land use regulation;

"(c) Is inconsistent with the underlying policy that provides the basis for the comprehensive plan or land use regulation; or

"(d) Is contrary to a state statute, land use goal or rule that the comprehensive plan provision or land use regulation implements."

that larger sites were available in the city or that a new application involving a larger site would be approved; and (4) where the "apparent intent of RLUIPA is to require that local governments treat proposed land uses more favorably, if necessary, than those proposed by non-religious entities," it was immaterial that the city would have denied a similar application proposed by a nonreligious entity.

Having determined that the city's decision imposed a substantial burden on the church, LUBA concluded that it need not determine whether the city's asserted governmental interest in protecting its residential neighborhoods was "compelling," because the city failed to meet its burden to show that denial of the church's application was the least restrictive means of furthering that interest. LUBA reasoned that available less restrictive means included the imposition of conditions of approval such as additional buffering, expansion of the site beyond 3.85 acres, relocation of the parking lots, and other conditions. LUBA cautioned that it did not "mean to suggest the RLUIPA imposes an obligation on local governments to proactively develop modifications or conditions of approval without the assistance of the applicant." It reasoned, however, that, consistently with RLUIPA, a local government could not, "ignore[ ] * * * proposed or apparent * * * conditions of approval that might allow approval as an alternative to denial." Rather, the local government could avoid the "preemptive force" of RLUIPA only by either changing its standards, by retaining its standards but granting an exemption, or by "adopt[ing] any other means that eliminates the substantial burden."

Next, LUBA rejected the city's argument that RLUIPA is unconstitutional. As noted, the city had argued, in part, that RLUIPA exceeded Congress's authority under the Enforcement Clause. The city reasoned that, in *City of Boerne v. Flores*, 521 US 507, 117 S Ct 2157, 138 L Ed 2d 624 (1997), the United States Supreme Court held that Congress's power under the Enforcement Clause is remedial, is limited to enforcing the provisions of the Fourteenth Amendment, and is exceeded when Congress seeks to expand rights protected by that amendment. The city argued that RLUIPA expands on such rights because it requires application of the "substantial burden / compelling interest" test to neutral

laws of general applicability in violation of *Employment Div. v. Smith*, 494 US 872, 110 S Ct 1595, 108 L Ed 2d 876 (1990). LUBA disagreed. Noting that RLUIPA applies only to decisions involving land use and institutionalized persons, that Congress had extensively documented the need for remedial measures with respect to land use decisions affecting religious institutions, that the decision in this case involved an "individualized assessment," and that Congress had relied on the spending and commerce clauses as additional authority for its adoption of the law, LUBA concluded that RLUIPA is consistent with *Smith* and does not exceed Congress's Enforcement Clause authority.

LUBA also concluded that, contrary to the city's assertion, RLUIPA does not violate the three-part test of *Lemon v. Kurtzman*, 403 US 602, 612-13, 91 S Ct 2105, 29 L Ed 2d 745 (1971), and therefore does not violate the Establishment Clause. LUBA determined that RLUIPA constrains what ordinarily would be a local government's discretion to deny an application for a nonconforming use—including uses, such as religious ones, that generate controversy and opposition—by requiring local governments to approve such applications under reasonable conditions of approval. LUBA determined that RLUIPA therefore effects a permissible accommodation of religious practices, the purpose and primary effect of which is to alleviate significant governmental interference with religious exercise.

Finally, having determined that the city's decision violated RLUIPA and that RLUIPA is constitutional, LUBA concluded that remand was required for the city to consider whether the church's application "may be approved under suitable conditions of approval." LUBA explained that the city's findings of noncompliance with applicable ordinances "repeatedly suggest" that, if the church utilized a greater portion of the 5.64-acre "parent" parcel or obtained additional land or an easement from the adjoining 10-acre parcel, the proposed building and parking lot might comply with those ordinances and that the city had "offer[ed] no reason to believe" that such modifications of the parcel size "cannot be converted into reasonable conditions of approval." LUBA stated that,

"[w]here the record indicates that the proposed church can comply with applicable criteria if suitable conditions of approval are imposed, we believe that RLUIPA prohibits the city from denying the application without considering more fully whether the proposed use may be approved under such conditions."

In a footnote, LUBA noted that it was "influenced by the applicant's stated willingness" to seek a larger parcel and accept other mitigating conditions. LUBA remanded the matter to the city for further consideration.[9]

The city now seeks judicial review of that decision, assigning error to LUBA's determinations that RLUIPA is applicable to its decision, that its decision violated RLUIPA, and that RLUIPA is constitutional. We review LUBA's legal conclusions in those regards for errors of law. ORS 197.850(9)(a); *Cox v. Polk County*, 174 Or App 332, 25 P3d 970, *rev den*, 332 Or 558 (2001).

RLUIPA is the current culmination of a series of legislative and judicial pronouncements relating to religious exercise. In *Sherbert v. Verner*, 374 US 398, 83 S Ct 1790, 10 L Ed 2d 965 (1963), and cases following it, the Court employed a balancing test to determine whether a legislative enactment violates the Free Exercise Clause of the First Amendment to the United States Constitution, which provides that "Congress shall make no law * * * prohibiting the free exercise" of religion. Under that test, the Court asked whether the law substantially burdened a religious practice and, if it did so, whether the burden was justified by a compelling governmental interest. *Id.* at 403-09. In 1990, however, in *Smith*—involving Oregon's denial of unemployment

---

[9] Under ORS 197.835, LUBA may affirm, reverse, or remand the relevant land use decision. Under OAR 661-010-0071(1), LUBA shall reverse the decision if the governing body exceeded its jurisdiction, the decision is unconstitutional, or the decision "violates a provision of applicable law and is prohibited as a matter of law." Under OAR 661-010-0071(2), LUBA shall remand the decision if the findings are insufficient, the decision is not supported by substantial evidence, the decision is flawed by procedural errors that prejudiced the substantial rights of the petitioner, or the decision "improperly construes the applicable law, but is not prohibited as a matter of law." We understand LUBA's remand in this case to encompass the last circumstance—specifically, that the city erred in determining that its conclusion that the parcel was too small did not impose a substantial burden on the church, but that the city's denial of the church's application for some other reason was not necessarily foreclosed.

benefits to persons terminated from employment due to their ingestion of a controlled substance in a religious ceremony, 494 US at 874—the Court declined to apply that test. Instead, the Court held that laws of general applicability that incidentally burden religion—including the Oregon law at issue—do not offend the Free Exercise Clause. *Id.* at 878-90.

In 1993, Congress responded to *Smith* by enacting the Religious Freedom Restoration Act (RFRA), 42 USC §§ 2000bb - 2000bb4 (1993). RFRA attempted to restore the *Sherbert* balancing test by requiring that governmental enactments that substantially burden the exercise of religion constitute the least restrictive means of furthering a compelling governmental interest. In *City of Boerne*, the Supreme Court invalidated RFRA as it applies to states and local governments on the ground that it exceeded Congress's powers under the Enforcement Clause of the Fourteenth Amendment. 521 US at 516-36. (RFRA remains in effect as applied to federal action.) Congress again responded, this time by enacting RLUIPA, which applies to governmental actions affecting religious exercise either by way of a land use regulation or—not at issue here—by way of a regulation applicable to institutionalized persons.

■ With the foregoing background in mind, we set out pertinent provisions of the statute. 42 USC section 2000cc provides:

"(a) Substantial burdens

"(1) General rule

"No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—

"(A) is in furtherance of a compelling governmental interest; and

"(B) is the least restrictive means of furthering that compelling governmental interest.

"(2)   Scope of application

"This subsection applies in any case in which—

"(A)   the substantial burden is imposed in a program or activity that receives Federal financial assistance, even if the burden results from a rule of general applicability;

"(B)   the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes, even if the burden results from a rule of general applicability; or

"(C)   the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

"(b)   Discrimination and exclusion

"(1)   Equal terms

"No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

"(2)   Nondiscrimination

"No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

"(3)   Exclusions and limits

"No government shall impose or implement a land use regulation that—

"(A)   totally excludes religious assemblies from a jurisdiction; or

"(B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction."

Also as pertinent here, 42 USC section 2000cc-2 provides, in part:

"(b)   Burden of persuasion

"If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion."

Next, 42 USC section 2000cc-3 provides, in part:

"(e)   Governmental discretion in alleviating burdens on religious exercise

"A government may avoid the preemptive force of any provision of this chapter by changing the policy or practice that results in a substantial burden on religious exercise, by retaining the policy or practice and exempting the substantially burdened religious exercise, by providing exemptions from the policy or practice for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden.

"* * * * *

"(g)   Broad construction

"This chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution."

42 USC section 2000cc-4 provides:

"Nothing in this chapter shall be construed to affect, interpret, or in any way address that portion of the First Amendment to the Constitution prohibiting laws respecting an establishment of religion (referred to in this section as the 'Establishment Clause').

Granting government funding, benefits, or exemptions, to the extent permissible under the Establishment Clause, shall not constitute a violation of this Act. In this section, the term 'granting,' used with respect to government funding, benefits, or exemptions, does not include the denial of government funding, benefits, or exemptions."

Finally, 42 USC section 2000cc-5 sets out definitions for the purpose of RLUIPA; it provides, in part:

"(7) Religious exercise

"(A) In general

"The term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief.

"(B) Rule

"The use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose."

Neither the United States Supreme Court nor the Oregon Supreme Court has considered the meaning or constitutionality of RLUIPA. By its terms, however, it makes clear that it differs in at least one respect from pre-RLUIPA standards for the protection of "religious exercise": under RLUIPA, "religious exercise" is not confined to those practices and beliefs mandated by the particular religion or pertaining to the religion's central precepts. *See, e.g., Thomas v. Review Bd. of Indiana,* 450 US 707, 717-18, 101 S Ct 1425, 67 L Ed 2d 624 (1981) (applying those standards under Free Exercise Clause); *Sherbert,* 374 US at 399 n 1, 404 (same). Rather, RLUIPA expressly defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of belief." 42 USC § 2000cc-5(7)(A).[10] Moreover, RLUIPA expressly defines "religious

---

[10] Although, under RLUIPA, a religious entity's practice need not be "central" to its system of religious belief, the belief must be "sincerely held." *See Shepherd*

exercise" to include "[t]he use, building, or conversion of real property for the purpose of religious exercise." 42 USC § 2000cc-5(7)(B); *see also Civil Lib. for Urban Believers v. City. of Chicago*, 342 F3d 752, 760 (7th Cir 2003) (*CLUB*) (definition in RLUIPA of "religious exercise" discloses Congress's intent to expand concept of religious exercise contemplated in decisions pertaining to RFRA and the Free Exercise Clause).

The parties agree on that much. They disagree, however, as to whether the city's decision in this case was consistent with RLUIPA in other respects. They also disagree as to RLUIPA's constitutionality. Before considering the statute's constitutionality, we consider the parties' statutory arguments. *See Powell v. Bunn*, 185 Or App 334, 354, 59 P3d 559 (2002), *rev den*, 336 Or 60 (2003) (court ordinarily considers statutory claim before proceeding to constitutional challenge).

## II. ASSIGNMENTS OF ERROR ON APPEAL

### A. *Individualized Assessment*

In its third assignment of error,[11] the city argues that LUBA erred in determining that its decision was subject to RLUIPA because, according to the city, its decision involved the application of neutral laws of general applicability and, conversely, did not involve an "individualized assessment" as provided in section 2000cc(a)(2)(C). The church responds that, even assuming that the ordinances at issue here are neutral laws of general applicability, the city engaged in an individualized assessment when it applied them to the church's application and that, accordingly, RLUIPA is applicable to the city's decision.

As quoted above, RLUIPA provides, in part, that the "general rule" set out in 42 USC section 2000cc(a)(1) applies in any case in which

*Montessori Center Milan v. Ann Arbor Charter Tp.*, 259 Mich App 315, 675 NW2d 271 (2003) (citing *Wisconsin v. Yoder*, 406 US 205, 215-19, 92 S Ct 1526, 32 L Ed 2d 15 (1972)).

[11] The city's first two assignments of error pertain to RLUIPA's constitutionality, which, as noted, we consider only if it is necessary to do so after considering the city's statutory arguments.

"the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved."

42 USC § 2000cc(a)(2)(C). In determining the intended meaning of the quoted provision, we examine the statute's text and structure and, if necessary, its legislative history. *See Department of Revenue of Ore. v. ACF Industries, Inc.*, 510 US 332, 339-46, 114 S Ct 843, 127 L Ed 2d 165 (1994) (examining the text, structure, and legislative history of federal enactment); *Shaw v. PACC Health Plan, Inc.*, 322 Or 392, 400, 908 P2d 308 (1995) (when interpreting a federal statute, court follows United States Supreme Court's methodology); *AT&T Communications v. City of Eugene*, 177 Or App 379, 402, 35 P3d 1029 (2001), *rev den*, 334 Or 491 (2002) (same); *see also Burlington No. R. Co. v. Okla. Tax Comm'n*, 481 US 454, 461, 107 S Ct 1855, 95 L Ed 2d 404 (1987) (Court declined to examine legislative history when text of enactment "plainly declare[d] the congressional purpose").

■        By its terms, 42 USC section 2000cc(a)(2)(C) refers to both "a land use regulation or system of land use regulations," on the one hand, and "individualized assessments" made under such a regulation or system of regulations, on the other. Based on that text and structure, we understand the former phrase to refer to preexisting, generally applicable laws and the latter phrase to refer to the application of those laws to particular facts or sets of facts. Thus, even assuming that a governmental entity's enactments are neutral laws of general applicability, their application to particular facts nevertheless can constitute an individualized assessment—particularly where, as here, the application does not involve a mere numerical or mechanistic assessment, but one involving criteria that are at least partially subjective in nature. Other courts have reached the same conclusion regarding the applicability of RLUIPA. *See Freedom Bapt. Church of Del. v. Tp. of Middleton*, 204 F Supp 2d 857, 868-69 (ED Pa 2002) (zoning ordinances by their nature impose individual assessment regimes involving case-by-case evaluation of the propriety of proposed activity against extant land use regulations; in referring to individualized assessments, RLUIPA

codifies existing jurisprudence regarding that concept); *Shepherd Montessori Center Milan v. Ann Arbor Charter Township*, 259 Mich App 315, 675 NW2d 271 (2003) (local governmental entity's evaluation and subsequent denial of applicant's petition for a variance from local zoning ordinance constituted an "individualized assessment" pursuant to 42 USC section 2000cc(a)(2)(C)). The city's third assignment of error fails.

## B. *Immunity from Land Use Regulations*

In its fourth assignment of error, the city argues that LUBA erred in interpreting and applying RLUIPA so as to provide religious entities with "immunity" from land use regulations, that is, by relieving religious entities from compliance with land use regulations with which other entities must comply.[12] The church responds that it did not argue below, and LUBA did not conclude, that RLUIPA confers such immunity. It contends that nothing about LUBA's interpretation or application of RLUIPA exempted the church from compliance with the city's procedural requirements for land use applications or with reasonable conditions of approval imposed by the city; it notes that, in fact, LUBA remanded the matter to the city for precisely the latter purpose. The church argues that, rather than conferring immunity to religious entities, RLUIPA merely requires a governmental entity to implement the least restrictive means of furthering a compelling governmental interest.

■ We agree that, by its terms, RLUIPA does not provide that religious entities are entirely exempt from land use regulations. Rather, RLUIPA provides standards for the

---

[12] Before LUBA, the city argued:

"If RLUIPA is held to be applicable in cases like this, applicants who claim to be religious institutions would be able to avoid all land use standards that provide any discretion to the decision-maker, even when that discretion is governed by legislatively adopted standards. A more reasonable interpretation is that RLUIPA protects religious institutions from arbitrary decisions *not based on pre-existing criteria.*"

(Emphasis added.) As discussed above in regard to the city's third assignment of error, we understand RLUIPA to apply, by its terms, to land use decisions that are based on preexisting, legislatively adopted land use regulations and that involve individualized assessments, such as the one made here.

imposition of land use regulations (or systems of land use regulations) on religious entities, namely, that such regulations not be imposed or implemented in a way that imposes a substantial burden on the entity unless the government demonstrates that the imposition of the burden is the least restrictive means of furthering a compelling governmental interest. *See CLUB*, 342 F3d at 762 (RLUIPA does not require governments to favor religious land uses "in the form of an outright exemption from land-use regulations"); *Petra Presbyterian Church v. Village of Northbrook*, No 03 C 1936, 2003 WL 22048089, at *12 (ND Ill Aug 29, 2003) (quoting legislative history of RLUIPA in explaining that it "does not provide religious institutions with immunity from land use regulation, nor does it relieve religious institutions from applying for variances, special permits * * * or other relief provisions in land use regulations, where available without discrimination or unfair delay").

Thus, the only sense in which RLUIPA properly can be characterized as conferring "immunity" from land use regulations is in the sense of partial protection from those constraints. *See Webster's Third New Int'l Dictionary* 1130-31 (unabridged ed 1993) (defining immunity both as freedom or exemption from otherwise applicable constraints and, alternatively, to partial protection from such constraints). That understanding of RLUIPA is consistent with LUBA's characterization of the statute's effect, as well as with its resulting disposition: As the church correctly notes, LUBA remanded the matter to the city for the city's determination whether the church "can comply with applicable criteria if suitable conditions of approval are imposed." Because LUBA did not interpret or apply RLUIPA in a manner entirely exempting the church from land use regulations, LUBA's order was not erroneous for that reason.

C. *Substantial Burden*

In its fifth assignment of error, the city contends that LUBA erred in characterizing the burden imposed on the church by the city's denial of its application and in determining that that burden was substantial. According to the city, the actual burden imposed on the church in this case was not its inability to construct a building for worship, as the city

contends LUBA found, but only the burden of submitting a new application for a project that "complies with applicable standards." The city argues that, consistently with the standard for what constitutes a "substantial burden" that has been established in pre-RLUIPA Free Exercise Clause cases, a regulation that merely inconveniences an entity or that has only an incidental effect of making religious practice more difficult or expensive is not a substantial burden. The city notes that church members currently are able to attend worship services in an adjoining town and that they therefore are not prevented from engaging in religious observances with fellow church members; conversely, the church has not demonstrated that its proposed design was the only one that met its requirements or, where the proposed building contained areas to be utilized for nonreligious purposes, that a building of the particular proposed size was required for religious purposes. The city argues that, consistently with *Vineyard Christian Fellowship v. City of Evanston*, 250 F Supp 2d 961 (ND Ill 2003), and relevant pre-RLUIPA cases applying the "substantial burden" test, it is not a substantial burden to deny a permit for a church building when the only effect is to change the location of religious services or to cause the church to have to continue carrying out its religious practices in existing locations.

In response, the church concedes that a substantial burden is more than a mere inconvenience; it acknowledges that, instead, it is one that forces adherents to refrain from religiously motivated conduct. The church nevertheless argues that that standard is met here for several reasons. First, the church argues that it "critically need[s]" a meetinghouse within West Linn for the use of its West Linn members and there is no other available site within the city, effectively precluding residents from worshiping in their own community and excluding the church from the city; according to the church, it therefore is being "forced" to refrain from religiously motivated behavior, namely, the construction of a new meetinghouse in West Linn. Second, the church argues that submission of a new application is itself a "Herculean" task involving architects, engineers, and other experts and a lengthy and costly hearing process, which, moreover, does not guarantee approval. Third, the church argues that, as

a result of the city's denial of its application, its existing meetinghouses are overcrowded and its ability to grow is impaired, in contravention of church doctrine requiring division of congregations once they reach a certain size.

We begin by determining the precise nature of the burden imposed by the city. As noted, LUBA understood the nature of the burden in this case to be impairment of the church's "ability to build a church." For the following reasons, we agree with the city that LUBA's characterization is erroneous. The city's final order states that the church proposed to situate its building on a parcel of 3.85 acres created from two existing lots totaling 5.64 acres and that the 3.85-acre parcel was of insufficient size considering the size, design, setbacks, and other features of the proposed building and parking lot. Although, as a result of those deficiencies, the city denied the church's application, nothing in the city's order indicates that it would not approve an application that met the stated concerns, either by proposing the same building and parking lot on a larger parcel or by modifying the design to suit its location on the currently proposed 3.85-acre parcel. Thus, this is not a case in which a governmental entity has entirely prevented a religious institution from building any church at all in the desired location. *Cf. Vineyard Christian Fellowship*, 250 F Supp 2d at 966 (churches were entirely prohibited in zone in which plaintiff sought to build church). Rather, we conclude that the burden imposed on the church in this case is the burden of being prevented from implementing the particular design proposal at issue plus, logically, the burden of submitting a new application for a modified proposal.[13] In addition, the church is burdened by conditions of crowding in its existing locations.

■      We turn to the question whether that burden, considered in its entirety, is "substantial" within the meaning of RLUIPA. As several courts have noted, the standard for what constitutes a "substantial burden" on religious exercise— including land use—is the same under RLUIPA as it is under

---

[13] We note that neither party relied below on ORS 197.522, providing that a local governmental entity shall approve an application that is consistent with applicable local law "or shall impose reasonable conditions on the application" to make it consistent with local law.

RFRA and the Free Exercise Clause. *See CLUB*, 342 F3d at 760-61 (so noting; citing legislative history of RLUIPA). Accordingly, in applying the "substantial burden" test, we may look for guidance to cases applying that standard in those contexts, as well as cases applying it under RLUIPA itself. Several decisions of the United States Supreme Court that apply the standard under the Free Exercise Clause—albeit not in the context of the regulation of a religious entity's use of its own land—are instructive. We begin with those.

In *Sherbert*, the Court considered whether the denial of unemployment benefits to a Seventh-Day Adventist who was discharged from her employment for refusing to work on her Saturday Sabbath constituted a substantial burden on her free exercise of religion. 374 US at 399-401. The Court concluded that it did because, although "only indirect" in its effect, *id.* at 404 (quoting *Braunfield v. Brown*, 366 US 599, 607, 81 S Ct 1144, 6 L Ed 2d 563 (1961))[14] that denial "force[d] her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning the precepts of her religion in order to accept work, on the other," *id.* The Court explained that "[g]overnmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against [the employee] for her Saturday worship." *Id.*

In *Thomas*, the Court considered whether a requirement that employees participate in the production of armaments imposed a substantial burden, under the Free Exercise Clause, on the religious exercise of a Jehovah's Witness. 450 US at 709. The Court again concluded that it did, explaining that the employee "was put to a choice between fidelity to religious belief or cessation of work," an impact the Court described as "coercive" and as "putting substantial pressure on an adherent to modify his [or her] behavior and to violate his [or her] beliefs." *Id.* at 717-18; *see also Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 US 136, 107 S

---

[14] In *Braunfield*, the plurality reasoned, in part, that a state law mandating Sunday closure of businesses did not burden the free exercise of persons whose religious beliefs also required them not to conduct business on Saturdays, because the law "simply regulates a secular activity and, as applied to appellants, operates so as to make the practice of their religious beliefs more expensive." 366 US at 605.

Ct 1046, 94 L Ed 2d 190 (1987) (reiterating statements of test in *Thomas* in concluding that state law violated the Free Exercise Clause).[15]

A different outcome prevailed in *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 US 439, 108 S Ct 1319, 99 L Ed 2d 534 (1988). In that case, various Native American groups challenged on Free Exercise Clause grounds the construction of a paved road through federal public land, asserting that the construction would damage sacred areas used for traditional religious rituals. The Court rejected the challenge. It noted that the Free Exercise Clause protects only against laws that "prohibit" the free exercise of religion. 485 US at 456. It concluded that, although the planned road "would interfere significantly with [the plaintiffs'] ability to pursue spiritual fulfillment according to their own religious beliefs," it would neither "coerce[ ]" the plaintiffs "into violating their religious beliefs" nor "penalize religious activity by denying any person an equal share of the rights, benefits, and privileges enjoyed by other citizens." *Id.* at 449.

Most recently, in *Locke v. Davey*, 540 US ____, 124 S Ct 1307, 158 L Ed 2d 1 (2004), the Supreme Court determined that a state program of scholarship assistance that prohibited use of the scholarships for pursuit of degrees in theology did not violate the Free Exercise Clause. The court reasoned that "the State's disfavor of religion (if it can be called that)" was relatively "mild[ ]" in that it "impose[d] neither criminal or civil sanctions on any type of religious service or rite," did not "deny to ministers the right to particulate in the political affairs of the community," and did not "require students to choose between their religious beliefs and receiving a government benefit." *Id.* at ____, 124 S Ct at 1312-13.

---

[15] In *Hobbie*, the worker was discharged for refusal to work certain hours, and subsequently was deprived of unemployment benefits, based on "sincerely held religious convictions adopted after beginning employment." 480 US at 137. The Court perceived no meaningful distinction between the worker's situation and that of the workers in *Sherbert* and *Thomas*, despite the fact that the disqualification from benefits was not absolute and therefore was, according to the state, less burdensome, and the fact that the worker herself caused the post-hiring change in her situation by changing her beliefs. The court rejected those distinctions, concluding that the "immediate" effects—ineligibility for benefits—were identical and substantial and that religious "converts" were no less subject to the protections of the Free Exercise Clause. *Hobbie*, 480 US at 143-44.

"The State has merely chosen not to fund a distinct category of education." *Id.* at _____ , 124 S Ct at 1313 (citing, *inter alia*, *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 US 520, 113 S Ct 2217, 124 L Ed 2d 472 (1993); *Hobbie*; *Thomas*; and *Sherbert*). The Court rejected the dissent's argument that "generally available benefits are part of the baseline against which burdens on religion are measured," concluding that the scholarships were generally available only as to "training for secular professions" and that training for religious professions and training for secular professions "are not fungible." *Locke*, 540 US at _____ , 124 S Ct at 1313. It also reasoned that the state's action was consistent with its "antiestablishment interests," in avoiding the use of tax funds "to support the ministry." *Id.* at _____ , 124 S Ct at 1313-14. The court noted that the state program permitted use of the scholarships at accredited religious schools and permitted students to take theology courses, so long as the training did not constitute training for the ministry. It also noted that there was nothing in the scheme that "suggests animus toward religion." *Id.* at _____ , 124 S Ct at 1315. The Court concluded, finally, that the exclusion of theology degrees from state-supported funding "places a relatively minor burden on" eligible scholars. *Id.* at _____ , 124 S Ct at 1315.

As noted, the United States Supreme Court has not considered what constitutes a substantial burden on religious exercise in the context of regulation of a religious entity's use of its own real property. However, a number of lower federal courts have done so under either RLUIPA, RFRA, or the Free Exercise Clause. We next consider those decisions, which, as will be seen, come to various conclusions.

In *CLUB*, an association of churches challenged a City of Chicago zoning ordinance, which allowed churches as a matter of right in residential zones but required churches to obtain special use permits in other zones—as violating RLUIPA. The Seventh Circuit noted that, under RLUIPA, the definition of "religious exercise" has been expanded to include the use and building of real property but that the standard for what constitutes a substantial burden on religious exercise is to be determined by reference to preceding RFRA and First Amendment jurisprudence. 342 F3d at 760-61 (citing 146 Cong Rec 7774-01, 7776 (July 27, 2000)). The

court noted that, in an earlier RFRA case, it had held that a substantial burden is one that "forces adherents of a religion to refrain from religiously motivated conduct, inhibits or restrains conduct or expression * * *, or compels conduct or expression that is contrary" to the adherents' religious beliefs. *Id.* at 761. The court concluded, however, that that test was not a correct construction of the substantial burden test under RLUIPA because, given the expanded definition of "religious exercise" in RLUIPA, "the slightest obstacle incidental to the regulation of land use—however minor the burden it would impose"—could be found "substantial." *Id.*

The court concluded that, instead, the proper test for whether a land use regulation imposes a substantial burden on religious exercise is whether it "necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise—including the use of real property for the purpose thereof within the regulated jurisdiction generally—effectively impracticable."[16] *Id.* The court recognized that the challenged city ordinances "may contribute to the ordinary difficulties associated with" compliance with land use regulation, including the scarcity of land in permissible zones and the "costs, procedural requirements, and inherent political aspects" of the approval process. The court also specifically recognized the "considerable time and money" expended by the applicants in that case in successfully locating within the city. *Id.* Nevertheless, the court concluded that the ordinances did not impose a substantial burden on religious exercise because they "d[id] not render impracticable the use of real property in [the city] for religious exercise, much less discourage churches from locating or attempting to locate in [the city]." *Id.* The court explained that to conclude otherwise would be to "favor" religious exercise with an "outright exemption from land-use regulation. * * * [N]o such free pass for religious land uses masquerades among the legitimate protections RLUIPA affords to religious exercise." *Id.* at 762;

---

[16] We note that the Seventh Circuit's inclusion of a requirement that the challenged governmental action be the "direct" cause of an effective impracticability of using the real property for religious purposes appears to be inconsistent with the test under the Free Exercise Clause stated by the Supreme Court in *Sherbert. See* 374 US at 404 (explaining that, if the purpose or effect of a law is to impede religious practice, the law is constitutionally invalid even though it has such effect only indirectly).

*see also San Jose Christian College v. City of Morgan Hill,*
360 F3d 1024 (9th Cir 2004) (for purpose of RLUIPA, "sub-
stantial burden" is governmental action that imposes a "sig-
nificantly great restriction or onus" on the exercise of religion
or that renders such exercise "effectively impracticable" (cit-
ing *CLUB,* 342 F3d at 761); city's denial of college's applica-
tion for rezoning of property purchased for religious educa-
tional use did not impose a substantial burden under
RLUIPA because it merely required college to comply with
requirements applicable to other applicants and the record
did not demonstrate that the college was precluded from
using alternative sites in the city); *Thiry v. Carlson,* 78 F3d
1491, 1495, *cert den,* 519 US 821 (10th Cir 1996) (concluding
that the relocation of gravesite and the subsequent use of the
site for a public highway did not substantially burden relig-
ious practices or beliefs in violation of RFRA; although the
parents would be "distressed and inconvenienced" by reloca-
tion of their child's gravesite, they had also engaged in relig-
ious practices at other locations and their beliefs did not ren-
der any particular site more sacred than any other or prohibit
the moving of gravesites when necessary); *Christian Gospel
Church v. San Francisco,* 896 F2d 1221, 1224 (9th Cir), *cert
den,* 498 US 999 (1990) (denial of permit to establish church
in residential neighborhood was not a substantial burden for
the purpose of the Free Exercise Clause; although the church
asserted the importance of "home worship" and insulation
from commercial environments, it previously had worshiped
in the banquet room of a hotel; the government's action there-
fore did not restrict current practice but merely prevented a
change in practice).

Several federal district courts have also reached the
result under RLUIPA that the court reached in *CLUB.* In
*Vineyard Christian Fellowship,* the court rejected the plain-
tiff's RLUIPA challenge to a city ordinance prohibiting
churches in certain zones, including a business zone in which
the plaintiff church had purchased property. The court
explained that a regulation that merely operates so as to
make religious exercise more expensive does not constitute a
substantial burden; it also noted that, pending construction
of the new church, the congregation "ha[d] continued to hold
worship services" at its current location in the city. 250 F

Supp 2d at 991. The court concluded that, although the church had "undoubtedly suffered serious hardships, first in its attempt to find a suitable property, and, once it found one * * *, in attempting to win approval for the intended uses," the burden imposed by the ordinance nevertheless was not substantial. *Id.* at 991-92; *see also Konikov v. Orange County*, 302 F Supp 2d 1328, 1345 (MD Fla 2004) (following reasoning of Seventh Circuit in *CLUB* in concluding that denial of special exception under zoning ordinance did not constitute substantial burden); *Petra Presbyterian Church*, 2003 WL 22048089 at *11-13 (relying on reasoning in *Vineyard Christian Fellowship* and *CLUB* in concluding that ordinance prohibiting churches in specified zones did not violate RLUIPA).

Still other federal district courts have found that land use regulations or their application constituted substantial burdens under RLUIPA. For example, in *Elsinore Christian Center v. City of Lake Elsinore*, 291 F Supp 2d 1083 (CD Cal 2003), the city denied the church's application for a conditional use permit on property the church had contracted to purchase. The district court readily concluded that the denial constituted a substantial burden under RLUIPA:

> "The burden on the Church's use of land in this case is not only substantial, but entire. By denying the conditional use permit, the City has effectively barred *any* use by the Church of the real property in question. This is not a case where the Church's proposed use of land—equated with 'religious exercise' by RLUIPA—is restricted in a minor or 'unsubstantial' way (e.g., by limiting a building's size or occupancy). Rather, the denial of the [conditional use permit] bars the Church's use altogether, thereby imposing the ultimate burden on the use of that land."

*Id.* at 1090 (emphasis in original).[17]

Different concerns led to the same result in *Murphy v. Zoning Com'n of Town of New Milford*, 289 F Supp 2d 87 (D Conn 2003). In that case, a local government ordered the

---

[17] The court noted that, to the extent the meaning of the term "substantial" in RLUIPA was ambiguous, another provision of RLUIPA mandates that the act be construed "in favor of a broad protection of religious exercise." *Elsinore Christian Center*, 291 F Supp 2d at 1091 (citing 42 USC § 2000cc-3(g) (quoted above)).

owners of a single-family dwelling in a residential zone to cease and desist from using the property as a Sunday meeting place for groups of 25 to 40 persons, including the parking of numerous vehicles on or near the property. After the property owners challenged the order under RLUIPA, the district court determined that the order constituted a substantial burden on the owners' religious exercise by reason of limiting the number of persons at, and "turning people away from," the Sunday meetings. *Id.* at 113-14.

Similarly, in *Westchester Day School v. Village of Mamaroneck*, 280 F Supp 230 (SDNY 2003), the operator of a religious day school sought a permit to construct new school buildings. The local authority denied the application in its entirety, and the school challenged the decision as violating RLUIPA. *Id.* at 232-33. The district court stated the test for whether the city's decision constituted a substantial burden on religious exercise as whether the governmental action "compel[led] action or inaction with respect to [a] sincerely held religious belief; mere inconvenience to the religious adherent or institution is insufficient." *Id.* at 240. The court noted that the school had asserted various ways in which its existing facilities, some more than a century old, were "inadequate for activities plaintiff deems necessary for its educational and religious mission," and that the city had responded that the school had failed to meet its burden because, even in the existing school, the students continued to be able to "gather to pray and be educated." *Id.* 240-41. The court agreed with the school that the burden imposed by the denial of the permit was substantial for three stated reasons: (1) it burdened the "quality" of the school's religious education; (2) the students' "religious experience is limited by the current size and condition of the school buildings"; and (3) denial of the permit prevented the school from accommodating a "growing number of students" wishing to pursue a religious education. *Id.* at 241-42.

Finally, *Cottonwood Christian Center v. Cypress Redev. Ag.*, 218 F Supp 2d 1203 (CD Cal 2002), also involved a governmental entity's denial of a church's application for a conditional use permit to construct a church building. The court rejected the government's argument that a "substantial burden" for purposes of RLUIPA included only those actions that coerce an individual into an activity prohibited by his or

her religion. The court instead concluded that "[p]reventing a church from building a worship site fundamentally inhibits its ability to practice its religion. Churches are central to the religious exercise of most religions. If Cottonwood could not build a church, it could not exist" and "numerous religious services cannot be performed." *Id.* at 1226.

■    We also have identified at least one relevant state court decision applying the "substantial burden" standard under RLUIPA.[18] In *Shepherd Montessori Center Milan*, the plaintiff applied for a permit to expand its religious daycare facility by adding a religious primary school. The Michigan Court of Appeals noted that, under United States Supreme Court jurisprudence, "for a governmental regulation to substantially burden religious activity, it must have a tendency to coerce individuals into acting contrary to their religious beliefs" and that, conversely, "a government regulation does not substantially burden religious activity when it only has an incidental effect that makes it more difficult to practice the religion." *Id.*, 259 Mich App at 330, 675 NW2d at 281 (citing *Lyng*, 485 US at 450-51). "Thus, for a burden on religion to be substantial, the government regulation must compel action or inaction with respect to the sincerely held belief; mere inconvenience to the religious institution or adherent is insufficient." *Id.* (citing *Werner v. McCotter*, 49 F3d 1476, 1479 n 1, *cert den*, 515 US 1166 (10th Cir 1995)). The court concluded that the plaintiff's evidence had made a sufficient showing of substantial burden to avoid summary judgment, including evidence that it would be infeasible for it to operate its primary school in a different location from its day care site "because of the burdens of having duplicate administration" and evidence that enrollment at a different location might be insufficient for the primary school to succeed.

■    Having considered the described standards as established by the Supreme Court under the Free Exercise Clause

---

[18] This court has considered, at least in passing, the substantial burden standard under RFRA. In *Fence v. Jackson County*, 135 Or App 574, 580-81, 900 P2d 524 (1995), the county challenged on judicial review LUBA's determination that a county ordinance, on its face, violated RFRA. The county argued that LUBA erred because RFRA applied only to a local governmental entity's action on a particular application for a particular land use, not to the law itself. We rejected that argument, noting in passing and without elaboration that LUBA had "determined, at least implicitly, that [the petitioner] had made a *prima facie* showing of substantial burden" resulting from the ordinance. *Id.* at 581.

and as applied in relevant contexts by other courts; and keeping in mind the admonition in section 2000cc-3(g) of RLUIPA that we construe the act "in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of [the act] and the [United States] Constitution," we return to the facts presented here. Again, the church applied for a conditional use permit in an R-10 zone, in which church buildings are permitted subject to conditional use approval. The city determined that, considering the size and, to a lesser extent, the topography of the parcel in relation to the scale and mass of the proposed building and the size of the proposed parking lot, there was insufficient light, vision, and noise buffering (both vegetative and topographical) between the proposed use and neighboring residential properties.

In addition, in determining that the proposed use did not meet the requirements of the ordinance provision relating to "site suitability," the city also expressed concern about the fact that, unlike other churches in the city, the proposed meetinghouse would be located in a "purely residential neighborhood" served by a "narrow two-lane road." The city noted that the church had presented evidence that "the building size and layout are in accord with a set design and therefore, not amenable to alterations such as a smaller structure" and that, conversely, the church had not established that additional area was not available. The city determined that the identified impacts—including, apparently, the traffic impact—would be "mitigated" if the proposed use were situated on a larger parcel, perhaps by using a greater portion of the existing 5.64-acre, two-lot property or a portion of an adjoining, vacant 10-acre parcel immediately to the north of the proposed development site. Nevertheless, the city did not impose as a condition of approval the requirement that the church acquire and use a larger parcel. Rather, the city simply denied the application.[19]

As previously discussed, the burden resulting from the city's decision is that the church remains unable to construct the particular design of building and parking lot that it

---

[19] The city is authorized to impose conditions of approval under ORS 227.175(4) and ORS 227.215. We note that we are unaware of any authority under which a city may require, as a condition of approval, that an applicant purchase or use a larger parcel than that identified in its application.

has proposed on the particular parcel it has identified. In addition, assuming that the church continues to wish to construct a meetinghouse in the city, it will be obliged to expend additional time, money, and other resources in order to submit a new application and undertake other necessary aspects of the approval process. Finally, unless and until the church obtains the city's approval of a proposed meetinghouse, church members will be obliged to continue worshiping at the neighboring facilities. Under RLUIPA, the church bears the burden of persuasion on the question whether the challenged government action substantially burdens its exercise of religion. 42 USC § 2000cc-2(b).

For the following reasons, we conclude that the church has not met its burden of persuasion. First, although the church clearly would benefit from having an additional meetinghouse, the record does not reflect that its members are unable at present to engage in worship services—one aspect of religious exercise—at the existing location. *Compare Vineyard Christian Fellowship*, 250 F Supp 2d at 991 (pending construction of new church, members continued to hold services at current location), *with Murphy*, 289 F Supp 2d at 113-14 (local government action resulted in worshipers being turned away from current worship site), *and Cottonwood Christian Center*, 218 F Supp 2d at 1226 (if religious entity could not construct church, it could not exist). *See also Christian Gospel Church*, 896 F2d at 1224 (no violation of Free Exercise Clause where city's action did not restrict current religious practice but merely prevented change in practice). Nor is that location so distant as to result in an unreasonable expense or inconvenience to members who must travel to it. As discussed, the members of the congregations attend church; most attend church in a neighboring community. Although the evidence shows that those meetinghouses are crowded, there is no evidence that that condition prevents any of the members from attending church or that it impairs in any way their ability to worship.

Second, as to the church's current inability to engage in the religious exercise of building a new meetinghouse, even assuming that the church is unable to acquire a larger parcel, we have no reason to believe that the city would not approve an application for a smaller or differently configured

building and parking lot that sufficiently addressed the applicable requirements relating to buffers and other forms of impact mitigation. *Cf. Elsinore*, 291 F Supp 2d at 1090 (substantial burden found under RLUIPA where denial of permit "effectively barred *any* use" of real property as compared to such minor or nonsubstantial restrictions on religious practice as "limiting a building's size or occupancy" (emphasis in original)). Nor does the record indicate that the particular building size or design proposed by the church was required by its religious beliefs. *See San Jose Christian College v. City of Morgan Hill*, 2002 WL 971779 (ND Cal 2002), *aff'd*, 360 F3d 1024, 2004 WL 414923 (9th Cir 2004) (no substantial burden under RLUIPA where city's action did not prevent religious entity from engaging in conduct "which the faith mandates"). Rather, it appears that the church merely had a preference, albeit a strong one, for obtaining approval of its particular design proposal. Thus, we do not believe that the city's rejection of that proposal was "coercive" or "put[ ] substantial pressure on an adherent to modify his [or her] behavior and to violate his [or her] beliefs." *See Thomas*, 450 US at 717-18 (enunciating the quoted tests under the Free Exercise Clause); *see also Locke*, 540 US at ___ , 124 S Ct at 1312-13 (state law did not violate Free Exercise Clause because, among other reasons, it did not require students to "choose between their religious beliefs and receiving a government benefit").[20]

Third, leaving for another day the question whether repeated denials and reapplications eventually can constitute a substantial burden on religious exercise, *see CLUB*, 342 F3d at 761 (recognizing those detriments), we conclude that the denial of the church's first and only application here, and the resulting need by the church to submit a second application, does not constitute such a burden. *See, e.g., Westchester Day School*, 280 F Supp at 240 ("mere inconvenience" is insufficient to show substantial burden).

---

[20] More generally, we do not understand RLUIPA necessarily to entitle a religious entity to construct the precise size and design of building of its choosing regardless of local standards and requirements; as previously discussed, RLUIPA does not confer total immunity from land use regulations.

Finally, the church has not asserted, and we do not discern, that any aspect of the city's ordinances or their application in this case "suggests animus toward religion." *See Locke*, 540 US at ___ , 124 S Ct at 1315 (stating that test under the Free Exercise Clause).

For all of those reasons, we conclude that the city's ordinances, as applied in the city's decision, did not impose a substantial burden on the church's religious exercise. Stated in the terms of the Seventh Circuit's decision in *CLUB*, neither the building of a new church (and the concomitant expansion of the church community) nor, in the meantime, the ability of current members to reasonably conveniently engage in worship has been rendered "effectively impracticable." It follows that the city's decision did not violate RLUIPA and that LUBA erred in concluding otherwise.

Because we conclude that the city's decision did not violate RLUIPA by reason of imposing a substantial burden on the church, we need not consider the city's sixth assignment of error, in which it asserts that LUBA erred in concluding that the city's denial did not constitute the least restrictive means of furthering its interest. The city's seventh assignment of error, challenging LUBA's instruction to the city that, on remand, it consider reasonable conditions of approval, is moot. Finally, because the city's decision did not violate RLUIPA and the city is willing to entertain an amended application from the church, we need not consider the city's first and second assignments of error, concerning the constitutionality of that statute.

Remanded with instructions to affirm city's denial of church's application without prejudice to filing of new or amended application.

# APPENDIX

Excerpt from West Linn City Council Final Order:

"Applicant has taken the position that the City's ability to deny the application is limited by the Religious Land Use and Institutionalized Persons Act (RLUIPA). RLUIPA contains two sets of provisions relating to local government land use regulations and religion. [42 USC section 2000cc(a)] prohibits local governments from imposing substantial burdens on the religious exercise of a person or religious assembly or institution unless the government demonstrates that the burden furthers a compelling government interest and is the least restrictive means of furthering that interest. [42 USC section 2000cc(b)] requires local government land use regulations to treat religious institutions equally and without discrimination. [42 USC section 2000cc(b)] also prohibits land use regulations that totally exclude or unreasonably limit religious assemblies within a jurisdiction.

"In most situations, it is not a substantial burden to require a religious entity to comply with generally applicable non-discriminatory land use standards. Under the circumstances of this application, where the proposed religious institution use could have used more of the total 5.6 acres and where there is an adjacent vacant 10 acre property, the application could have been for a similar development (same building size and number of parking spaces) on a larger lot that would have allowed a different configuration with additional buffering to meet the standards that were not met. Alternatively, the application could have attempted to enter into an easement or other agreement with the property owner to the north. The City Council finds that the denial based on the failure to meet applicable standards imposes no burdens on religious exercise because the applicant might have obtained approval if the site were larger.

"A substantial burden is imposed only if [the government's action] 'burdens the adherent's practice of his or her religion * * * by preventing him or her from engaging in conduct or having a religious experience which the faith mandates. This interference must be more than an inconvenience; the burden must be substantial * * *.' *San Jose Christian College v. City of Morgan Hill*, (ND Cal, Order Granting

Motion for Summary Judgment, March 8, 2002). The legislative history of RLUIPA includes the following statement: '[T]his Act does not provide religious institutions with immunity from land use regulation, nor does it relieve religious institutions from applying for variances, special permits or exceptions, hardship approval, or other relief provisions in land use regulations, where available without discrimination or unfair delay.' To grant this application would be to provide the applicant with immunity from land use regulation because applicant submitted a land use application for a project that does not meet applicable standards and criteria.

"Maintaining the quality of residential neighborhoods is one of the prime duties of a municipal government and is a compelling government interest. The City does allow churches in residential areas, but not if they are inconsistent with universally applicable land use rules and adversely affect the quality of the residential neighborhood. While large churches and parking lots may be permitted, even in residential areas, they must be on lots of sufficient size, dimensions and configuration, taking into account topography and vegetation, to avoid a negative impact on the neighborhood. The proposed development (building and parking lot size and design) might have been acceptable on a larger parcel. The City is not placing a substantial burden on the applicant by concluding that the proposed 'parcel,' which is not yet a legal lot or parcel, is not large enough to accommodate the proposed development without substantial impacts on surrounding properties.

"The City does not discriminate against or among religious institutions. Any applicant, whether a religious institution of any type or denomination or a non-religious entity, would have been denied if it had proposed the same size building and parking lot on the 3.85 acre site at this location. The City has recently denied an application for a commercial building because of incompatible mass and scale in a situation in which the commercial building was in a commercial area with other commercial buildings. It is not a substantial burden on a religion or religious belief to deny a land use application when any other applicant would have been denied for the same proposal."